**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| TEXAS DEMOCRATIC PARTY; DSCC; DCCC, | § § § | |
| Plaintiffs | § | |
| vs. | § § | Civil Action No. 5:20-cv-00008-OLG |
| RUTH R. HUGHS, in her official capacity as the Texas Secretary of State, | § § § | Related to *Stringer v. Cascos*, No. 5:16-cv-00257-OLG |
| Defendant. | § § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**

Marc E. Elias*
Uzoma Nkwonta*
Emily Brailey*
Stephanie Command*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959

Chad W. Dunn
TX State Bar No. 24036507
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822
Facsimile: (512) 515-9355

*Counsel for Plaintiff Texas Democratic Party*

Skyler M. Howton
TX State Bar No. 24077907
PERKINS COIE LLP
500 N. Akard St., Suite 3300
Dallas, TX 75201
Telephone: (214) 965-7700
Facsimile: (214) 965-7799

*Counsel for the Plaintiffs*
*Admitted Pro Hac Vice*

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.    STANDARD OF REVIEW .................................................................................. 2

   A.   Motion to Dismiss Under Rule 12(b)(1). ..................................................... 2

   B.   Motion to Dismiss Under Rule 12(b)(6). ..................................................... 3

III.   ARGUMENT ....................................................................................................... 3

   A.   The Secretary is Texas's chief election officer and the correct defendant. ...................... 3

      1.   The Secretary caused, and has authority to redress, Plaintiffs' injuries. ...................... 3

      2.   Sovereign immunity does not shield the Secretary from liability................................. 5

   B.   Plaintiffs have standing to challenge the wet signature rule. ............................................. 8

      1.   Plaintiffs have established organizational and associational standing........................... 8

      2.   Plaintiffs established statutory standing...................................................................... 13

   C.   Plaintiffs have a private right of action to sue under the Civil Rights Act. ...................... 14

   D.   The wet signature rule imposes an undue burden on the right to vote. ........................... 16

   E.   The wet signature rule subjects voters to arbitrary enforcement. .................................... 18

   F.   The wet signature rule jeopardizes the integrity of the electoral process and therefore violates Plaintiffs' due process rights. ............................................................................ 18

IV.   CONCLUSION................................................................................................... 20

## TABLE OF AUTHORITIES

CASES                                                                                                         PAGE

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*,
    851 F.3d 507 (5th Cir. 2017) ..................................................................................................5, 7, 8

*Ala. Legislative Black Caucus v. Alabama*,
    135 S. Ct. 1257 (2015)..............................................................................................................11

*Alexander v. Sandoval*,
    532 U.S. 275 (2001)..................................................................................................................15

*Allee v. Medrano*,
    416 U.S. 802 (1974)..................................................................................................................13

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
    627 F.3d 547 (5th Cir. 2010) ...................................................................................................13

*Bay Cty. Democratic Party v. Land*,
    347 F. Supp. 2d 404 (E.D. Mich. 2004)...................................................................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................................3, 18

*Bell v. Southwell*,
    376 F.2d 659 (5th Cir. 1967) ...............................................................................................14, 18

*Briscoe v. Kusper*,
    435 F.2d 1046 (7th Cir. 1970) .................................................................................................19

*Burdick v. Takushi*,
    504 U.S. 428 (1992)..................................................................................................................16

*Cannon v. Univ. of Chi.*,
    441 U.S. 677 (1979)..................................................................................................................15

*Chapman v. King*,
    154 F.2d 460 (5th Cir. 1946) ...................................................................................................13

*Choice Inc. of Texas v. Greenstein*,
    691 F.3d 710 (5th Cir. 2012) .....................................................................................................7

*Church of Scientology of Cal. v. Cazares*,
    638 F.2d 1272 (5th Cir. 1981) .................................................................................................13

*Coal. for Educ. in Dist. One v. Bd. of Elections*,
    495 F.2d 1090 (2d Cir. 1974)...................................................................................................14

*Common Cause/Ga. v. Billups*,
    406 F. Supp. 2d 1326 (N.D. Ga. 2005) ...................................................................................14

**TABLE OF AUTHORITIES**

CASES                                                                            PAGE

*Cort v. Ash,*
    422 U.S. 66 (1975).................................................................................13

*Crawford v. Marion Cty. Election Bd.,*
    553 U.S. 181 (2008)...........................................................................10, 12

*Curling v. Raffensperger,*
    403 F. Supp. 3d 1311 (N.D. Ga. 2019) ...........................................19, 20

*Davis v. Commonwealth Election Comm'n,*
    Case No. 1-14-CV-00002, 2014 WL 2111065 (D. N. Mar. I. May 20, 2014) ........................14

*Delegates to the Republican Nat'l Convention v. Republican Nat'l Comm.,*
    Case No. SACV 12-00927 2012 WL 3239903, *5 n.3 (C.D. Cal. Aug. 7,
    2012) ..............................................................................................14

*Democratic Exec. Comm. of Fla. v. Lee,*
    915 F.3d 1312 (11th Cir. 2019) .............................................................16

*Den Norske Stats Oljeselskap As v. HeereMac Vof,*
    241 F.3d 420 (5th Cir. 2001) ..................................................................2

*Duncan v. Poythress,*
    657 F.2d 691 (5th Cir. 1981) ................................................................18

*Fiess v. State Farm Lloyds,*
    202 S.W.3d 744 (Tex. 2006)...............................................................20

*Fla. Democratic Party v. Scott,*
    215 F. Supp. 3d 1250 (N.D. Fla. 2016)...............................................12

*Friends for the Earth, Inc. v. Chevron Chem. Co.,*
    129 F.3d 826 (5th Cir. 1997) ...............................................................12

*Friends of the Earth, Inc. V. Laidlaw Envtl. Servs., Inc.,*
    528 U.S. 167 (2000)..............................................................................8

*Green Valley Special Util. Dist. v. Walker,*
    324 F.R.D. 176 (W.D. Tex. 2018) ........................................................8

*Hall v. Louisiana,*
    983 F. Supp. 2d 820 (M.D. La. 2013)...................................................8

*Hancock Cty. Bd. of Supervisors v. Ruhr,*
    487 F. App'x 189 (5th Cir. 2012)........................................................11

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982)..............................................................................9

# TABLE OF AUTHORITIES

**CASES**                                                                                                                   **PAGE**

*Hotze v. Burwell*,
   784 F.3d 984 (5th Cir. 2015) ......................................................................................2

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977)..................................................................................................12

*Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*,
   912 F.3d 759 (5th Cir. 2019) ....................................................................................3

*Jornaleros de Las Palmas v. City of League City*,
   945 F. Supp. 2d 779 (S.D. Tex. 2013) ....................................................................13

*K.P. v. LeBlanc*,
   627 F.3d 115 (5th Cir. 2010) .................................................................................6, 7

*League of Women Voters of Fla., Inc., v. Detzner*,
   314 F. Supp. 3d 1205 (N.D. Fla. 2018)....................................................................5

*League of Women Voters v. Brunner*,
   548 F.3d 463 (6th Cir. 2008) .............................................................................19, 20

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)..................................................................................................13

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)................................................................................................2, 8

*Martin K. Eby Const. Co. v. Dall. Area Rapid Transit*,
   369 F.3d 464 (5th Cir. 2004) ...............................................................................3, 18

*Mitchell v. Wright*,
   154 F.2d 924 (5th Cir. 1946) ...................................................................................13

*NAACP v. City of Kyle, Tex.*,
   626 F.3d 233 (5th Cir. 2010) ...............................................................................9, 11

*Nat'l Treasury Emps. Union v. United States*,
   101 F.3d 1423 (D.C. Cir. 1996)...............................................................................10

*OCA-Greater Houston v. Texas*,
   867 F.3d 604 (5th Cir. 2017) ...................................................................4, 6, 10, 16

*Peregoy v. Amoco Prod. Co., a Div. of Standard Oil of Ind.*,
   742 F. Supp. 372 (E.D. Tex. 1990)........................................................................4, 5

*Reddix v. Lucky*,
   252 F.2d 930 (5th Cir. 1958) ...................................................................................14

**TABLE OF AUTHORITIES**

CASES                                                                          PAGE

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
    547 U.S. 47 (2006) ........................................................................................8

*Sandusky Cty. Democratic Party v. Blackwell*,
    387 F.3d 565 (6th Cir. 2004) ....................................................................12

*Schwier v. Cox*,
    340 F.3d 1284 (11th Cir. 2003) ...........................................................14, 16

*Sierra Club v. Andrus*,
    610 F.2d 581 (9th Cir. 1979), *vacated on other grounds by Sierra Club v.*
    *Watt*, 451 U.S. 965 (1981) ......................................................................15

*Stringer v. Pablos*,
    320 F. Supp. 3d 862 (W.D. Tex. 2018)...............................................2, 17

*Stringer v. Pablos*,
    No. SA-16-CV-257-OG, 2020 WL 532937 (W.D. Tex. Jan. 30, 2020) *rev'd*
    *and remanded sub nom. Stringer v. Whitley*, 942 F.3d 715 (5th Cir. 2019) ...........................16

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009) ......................................................................................11

*Taylor v. Howe*,
    225 F.3d 993 (8th Cir. 2000) ....................................................................14

*TDP v. Benkiser*,
    459 F.3d 582 (5th Cir. 2006) .........................................................10, 11, 12

*Texas v. United States*,
    945 F.3d 355 (5th Cir. 2019) ......................................................................8

*Till v. Unifirst Fed. Sav. & Loan Ass'n*,
    653 F.2d 152 (5th Cir. 1981) ....................................................................13

*Turner v. Pleasant*,
    663 F.3d 770 (5th Cir. 2011) ......................................................................3

*United States v. Texas*,
    422 F. Supp. 917 (S.D. Tex. 1976) ............................................................4

*Valdez v. Cockrell*,
    274 F.3d 941 (5th Cir. 2001) ......................................................................7

*Valles v. Lynaugh*,
    835 F.2d 126 (5th Cir. 1988) ......................................................................5

## TABLE OF AUTHORITIES

**CASES**                                                                           **PAGE**

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,*
   535 U.S. 635 (2002)................................................................................5, 8

**STATUTES**

Texas Election Code § 31.004 ...............................................................................6

Texas Election Code § 31.003 ................................................................... passim

Texas Election Code § 31.004(a) ..........................................................................3

Texas Election Code § 13.002(a) .....................................................................4, 20

Texas Election Code § 13.002(b).......................................................................20

Texas Election Code § 13.143(d-2) ...................................................................4, 20

**OTHER AUTHORITIES**

Rule 12(b)(1)..........................................................................................2, 11

Rule 12(b)(6)..............................................................................................3

## I.    INTRODUCTION

The Texas Secretary of State ("Secretary") imposed an unreasonable and arbitrary wet signature requirement for voter registration applications just five days before the registration deadline for the 2018 general election, leading county registrars to reject applications from eligible citizens, and leaving voters scrambling in a race against the clock to avoid outright disenfranchisement. The Secretary claims her eleventh-hour insistence that all applications must be executed with a wet signature was rooted in Texas law, but identifies no provision that makes reference to such a requirement. In fact, State agencies collect and submit thousands of voter registration applications each year that do not contain a wet signature, and State election officials accept and process these applications without any objection from the Secretary. Yet in this case, the Secretary intervened and imposed her wet signature rule only in response to the efforts of an organization (Vote.org) engaged in a campaign to expand voter participation and increase turnout in Texas.

Now forced to answer for these actions, the Secretary files a Motion to Dismiss ("Motion") in which she makes several meritless arguments designed to avoid responsibility for duties with which she is charged by law. She claims, for instance, that she is not the appropriate defendant because she has no authority to instruct local registrars, yet the Texas Election Code mandates that the Secretary must obtain and maintain uniformity in the application of the law. Texas Election Code § 31.003. She claims that she is powerless to implement any relief to protect Texas voters in the upcoming election, yet the Election Code expressly grants the Secretary authority to "take appropriate action to protect the voting rights of citizens of this state," and "order" officials "to correct the offending conduct." *Id*. § 31.005. And while the Secretary challenges Plaintiffs' standing, she fails to point to any authority that agrees with her argument that a political party

cannot challenge laws that impair its electoral prospects or burden and disenfranchise its supporters, ignoring the legion of cases that say just the opposite.

On the merits, the Secretary's Motion simply confirms that the wet signature rule serves no purpose that can justify the burden it imposes on Plaintiffs or the voters with whom they associate. Having admitted in prior litigation *before this Court* that election officials do not use "wet signatures" on voter registration applications for any purpose, the Secretary's claim that the wet signature rule combats fraud and helps maintain accurate voting rolls is clearly contrived for this lawsuit. *Stringer v. Pablos*, 320 F. Supp. 3d 862, 873-74 (W.D. Tex. 2018). And it is entirely unclear whether the Secretary's second asserted interest—maintaining the solemnity of voter registration—has ever been recognized as a legitimate government interest, much less a justification to burden the franchise. The wet signature rule is thus unsupported by any body of law, advances no legitimate government interest, and violates the constitutional rights of Plaintiffs, as well as their members and constituents. The Secretary's Motion to Dismiss should be denied.

## II.      STANDARD OF REVIEW

### A.      Motion to Dismiss Under Rule 12(b)(1).

On a motion to dismiss for lack of subject matter jurisdiction, this Court must accept all factual allegations in the complaint as true. *See Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). The Court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id*. As to standing, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "Thus, [the court] will not dismiss for lack of standing if [it] reasonably can infer from the plaintiffs' general allegations" that they have standing. *Hotze v. Burwell*, 784 F.3d 984, 992 (5th Cir. 2015).

**B.      Motion to Dismiss Under Rule 12(b)(6).**

A court considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). A claim should only be dismissed if a court determines that it is "beyond doubt" that the claimant cannot prove a plausible set of facts that support the claim and would justify relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A motion to dismiss under Rule 12(b)(6) is generally disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019).

## III.      ARGUMENT

**A.      The Secretary is Texas's chief election officer and the correct defendant.**

**1.      The Secretary caused, and has authority to redress, Plaintiffs' injuries.**

In suggesting that she is not the proper defendant, the Secretary misconstrues the nature of Plaintiffs' claims. Plaintiffs' lawsuit turns on whether the Secretary's interpretation and directive—that wet signatures are required for voter registration applications—is unlawful. It thus directly concerns actions taken *by the Secretary*, who is charged by law with "preparing . . . directives and instructions relating to . . . election laws," interpreting the Texas Election Code, and maintaining "uniformity in the application, operation, and interpretation of" the Code across the counties. Texas Election Code §§ 31.003, 31.004(a). But the Secretary obfuscates the issue, arguing she does not approve or reject applications. ECF No. 13 at 5. This red herring is easily disposed of by reference to the Amended Complaint, which clearly alleges that, "[b]y *interpreting*

Texas election laws to impose a wet signature rule, *the Secretary's guidance to election officials* imposes an undue burden on the right to vote[.]" Am. Compl. ¶ 37 (emphasis added).

To the extent that Texas Election Code §§ 13.002(a) and 13.143(d-2) impose a wet signature rule apart from the Secretary's interpretation (a claim Plaintiffs refute), Plaintiffs challenge the constitutionality of those provisions in the alternative, Am. Compl. ¶ 38, and binding Fifth Circuit precedent establishes that such challenges to Texas election statutes are properly lodged against the Secretary. *OCA-Greater Houston v. Texas*, 867 F.3d 604, 613 (5th Cir. 2017) (quoting Texas Election Code § 31.001(a)); *see also United States v. Texas*, 422 F. Supp. 917, 921 (S.D. Tex. 1976). "The facial invalidity of a Texas election statute is, without question, fairly traceable to and redressable by the . . . Secretary of State, who serves as the 'chief election officer of the state.'" *OCA*, 867 F.3d at 613. To claim that the Secretary is not a proper defendant here asks this Court to ignore the Fifth Circuit's clear holding on this issue, which it cannot do. *Peregoy v. Amoco Prod. Co., a Div. of Standard Oil of Ind.*, 742 F. Supp. 372, 375 (E.D. Tex. 1990) ("This court is bound by decisions of the Court of Appeals for the Fifth Circuit.").

The Secretary's description of her official duties further ignores portions of the Election Code that empower the Secretary to "take appropriate action to protect the voting rights of the citizens of this state from abuse by the authorities administering the states['] electoral processes," and to "order" local officials to "correct offending conduct" when performing official functions "in a manner that impedes the free exercise of a citizen's voting rights." Texas Election Code. § 31.005. Indeed, the Secretary's authority to issue orders to protect voting rights is accompanied by its own enforcement scheme: if an official "fails to comply, the secretary may seek enforcement . . . by a temporary restraining order or a writ of injunction or mandamus obtained through the attorney general." *Id*. Thus in addition to being the chief election official responsible for

maintaining uniformity in the application and interpretation of the Election Code, Texas law expressly authorizes the Secretary to remedy the voting rights violations identified in Plaintiffs' lawsuit and to implement their requested relief. *See id*. The Secretary is unquestionably the proper defendant to this lawsuit.

  2.  **Sovereign immunity does not shield the Secretary from liability.**

  The Secretary's mischaracterization of her authority and her willingness to ignore settled precedent spills over to her claim that the *Ex parte Young* doctrine does not apply here. *Ex parte Young* requires two steps: first, a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective," *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alterations incorporated), and second, consideration of whether the official in question has "'some connection' to the state law's enforcement and threaten[s] to exercise that authority." *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 517 (5th Cir. 2017).

  That analysis confirms that *Ex parte Young* applies, as Plaintiffs allege ongoing Fourteenth Amendment violations, seek declaratory and injunctive relief, and the Secretary is responsible for creating the challenged action. Am. Compl. ¶¶ 26-44; *id*. at Prayer for Relief. It cannot be true that the Secretary has no connection to her own directives and interpretations of state law, which state and local authorities follow in administering election laws. *See* Texas Election Code § 31.003. Here, the Secretary does not have just *some* connection to enforcing the wet signature rule, she is the single agent responsible for creating the rule itself. *See, e.g., League of Women Voters of Fla., Inc., v. Detzner*, 314 F. Supp. 3d 1205, 1213 (N.D. Fla. 2018) ("Simply stated, a federal court can review a state official's interpretation of—or gloss over—state law when it is alleged to violate the United States Constitution."); *see also Valles v. Lynaugh*, 835 F.2d 126, 128 (5th Cir. 1988) (federal court will review state's interpretation of state law if the interpretation violates the

Constitution). Plaintiffs allege that the Secretary imposed the wet signature rule in connection with her authority to "assist and advise all election authorities with regard to the application, operation, and interpretation of this code and of the election laws outside this code." Texas Election Code Ann. § 31.004. In doing so, the Secretary was acting pursuant to her power to "obtain and maintain uniformity in the application, operation, and interpretation of [the Election Code] and of the election laws outside th[e] code," Texas Election Code Ann. § 31.003, and counties followed suit by subsequently rejecting such applications because of the wet signature rule, Am Compl. ¶¶ 19-20.

To the extent the Election Code has a wet signature requirement (and it does not), the exception to *Ex parte Young* still applies because the Secretary's actions are connected to her duty to enforce the law. *OCA* forecloses the Secretary's attempt to suggest otherwise. 867 F.3d at 613. There, the Fifth Circuit distinguished *Okpalobi v. Foster*, 244 F. 3d 405—"where the defendants had no enforcement connection with the challenged statute"—from the plaintiffs' facial challenge to the election code, finding that the Texas Secretary of State, as the chief election officer, "is instructed by statute to obtain and maintain uniformity in the application, operation and interpretation of [the election] code . . . ." *Id.* (quotation marks omitted); *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010); Texas Election Code § 31.003. That is precisely what the Secretary did, as confirmed by her spokesman, when she instructed local registrars on the purported enforcement of section 13.002 by advising them that the Vote.org applications were invalid. *See* Am. Compl. ¶ 18; *see also id.* ¶ 19 (County would have accepted Vote.org applications absent Secretary's direction).

By focusing solely on the fact that she does not approve or reject applications, the Secretary misapplies the doctrine and again ignores binding precedent. The Fifth Circuit has explained that

the type of "direct enforcement found in *Ex parte Young* . . . is not required," because plaintiffs need only establish a "connection to the enforcement," which is demonstrated when the official "effectively ensures the [statutory] scheme is enforced" or engages in actions, pursuant to the statute, that constrain the plaintiffs. *Air Evac EMS*, 851 F.3d at 519. "The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists." *K.P.*, 627 F.3d at 124. Thus, it does not matter whether the Secretary personally reviews voter registration application signatures; it is sufficient that she directed local officials on the statute's interpretation and effectively ensured that it was universally enforced to Plaintiffs' detriment. *See Air Evac EMS*, 851 F.3d at 519.

While the Secretary attempts to distance herself from her statutory duty to ensure uniform enforcement of the Election Code, her arguments lack merit. She contends, for instance, that "obtain[ing] and maintain[ing] uniformity" is merely a "goal" that she has no power to achieve, ECF No. 13 at 6, yet that description of her role is irreconcilable with section 31.003's plain language. The statute's use of the word "shall" in establishing the Secretary's duties makes clear that it imposes a legal mandate. *See* Texas Election Code § 31.003 ("The secretary of state shall obtain and maintain uniformity . . . the secretary shall prepare . . . written directives and instructions); *see also Valdez v. Cockrell*, 274 F.3d 941, 951 (5th Cir. 2001) ("The word 'shall' is mandatory in meaning."). The Secretary also contests, but stops short of denying, that she instructed local registrars not to accept the Vote.org registration applications. ECF No. 13 at 4-5. And she does not refute that her own spokesman acknowledged that the Secretary instructed counties to inform the Vote.org applicants that their applications were incomplete. Am. Compl. ¶¶ 1, 18. The Secretary's arguments merely reject Plaintiffs' factual allegations and thus provide no

grounds for dismissal. *See Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012) ("In assessing jurisdiction, the district court is to accept as true the allegations and facts set forth in the complaint.").

Finally, the Secretary's attempt to exclude "injunctions directing 'affirmative action'" from *Ex parte Young*'s reach is plainly wrong, as demonstrated by the long line of cases applying the doctrine in suits imposing mandatory injunctions. *See, e.g.*, *Verizon Md.*, 535 U.S. at 640; *Air Evac EMS, Inc.*, 851 F.3d at 521; *Green Valley Special Util. Dist. v. Walker*, 324 F.R.D. 176, 187 (W.D. Tex. 2018); *Hall v. Louisiana*, 983 F. Supp. 2d 820, 832 (M.D. La. 2013). By contrast, the Secretary relies on cherrypicked quotes from cases that did not even apply the rule that she advances, none of which prevent the Court from granting Plaintiffs' requested injunction.

**B.    Plaintiffs have standing to challenge the wet signature rule.**

All three Plaintiffs easily meet the requirements for Article III standing, as each has suffered and will continue to suffer legally cognizable injuries because of the Secretary's actions. To establish Article III standing, a plaintiff must show (1) an "injury in fact" that is concrete, particularized, and actual or imminent; (2) that the injury is "fairly traceable" to the challenged conduct of the defendant; and (3) that it is likely that the injury can be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61; *Friends of the Earth, Inc. V. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000). Because Plaintiffs seek injunctive relief, only one party need have Article III standing for the case to proceed. *See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006); *Texas v. United States*, 945 F.3d 355, 377–78 (5th Cir. 2019).

**1.    Plaintiffs have established organizational and associational standing.**

Plaintiffs have direct organizational standing because the wet signature rule impairs their mission of electing Democrats to the U.S. Senate, U.S. House of Representatives, and to Democratic offices throughout Texas, and requires Plaintiffs to divert significant resources to their

voter registration activities in order to counteract the unconstitutional burdens imposed by the rule. *See* Am. Compl. ¶¶ 8-14. Plaintiffs have also demonstrated representative or associational standing to challenge the Secretary's conduct on behalf of Texas voters who intend to support their candidates in elections for offices across the state in the 2020 general election and will be burdened by the wet signature rule, as well as on behalf of the candidates they endorsed and support.

The Supreme Court has long recognized that a direct organizational injury is cognizable in two ways: (1) a diversion of organizational resources to identify or counteract the allegedly unlawful action, or (2) frustration of the organization's mission. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). And the Fifth Circuit has affirmed that "an organization may establish injury in fact by showing that it had diverted significant resources to counteract the defendant's conduct; hence, the defendant's conduct significantly and 'perceptibly impaired' the organization's ability to provide its 'activities—with the consequent drain on the organization's resources.'" *NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010) (quoting *Havens Realty Corp.*, 455 U.S. at 379).

Plaintiffs easily meet this standard. The Complaint alleges concrete and particularized facts for all Plaintiffs that demonstrate the impairment of their mission and consequent diversion-of-resources from other specific organizational priorities to counteract the burdens the wet signature rule imposes on the voters with whom they associate. Am. Compl. ¶¶ 8-14. For example, TDP has invested significant resources in voter engagement efforts to register over 2.5 million unregistered, eligible Democratic voters. Am. Compl. ¶ 9. But the Secretary's wet signature rule limits the effectiveness of TDP's efforts and makes its registration program more difficult, expensive, and time consuming. *Id*. Now TDP must divert funds to obtaining a wet signature on every single application and to assist voters whose applications were rejected, and who may be unaware or

confused about their registration status and the steps they must take to ensure they are registered. Am. Compl. ¶ 10. DSCC and DCCC similarly plan to invest millions of dollars to support the Democratic nominees in upcoming United States Senate and Congressional races. Am. Compl. ¶ 11. Like TDP, registering Democratic voters is instrumental to their mission and DCCC has already committed hundreds of thousands of dollars to increase voter registration among eligible Texans. *Id*. ¶ 13. The wet signature requirement requires them to divert resources to ensure eligible voters comply, and to assist those whose applications are rejected under the rule—none of which are "routine activities" as the Secretary suggests. *Id*. ¶¶ 11-14. These are precisely the kinds of injuries that confer standing on organizational plaintiffs. *See OCA*, 867 F.3d at 610-13 (finding standing where OCA had to counteract the effect of Texas's unlawful restriction and was forced to divert resources educating voters to ensure they would not be denied their rights). *See also Crawford v. Marion Cty. Election Bd*., 553 U.S. 181, 189 n.7 (2008) (agreeing with Seventh Circuit that state Democratic party had standing to challenge law requiring government-issued photo identification to vote); *TDP v. Benkiser*, 459 F.3d 582, 585-86 (5th Cir. 2006) (holding TDP had standing to challenge state action based on harmed electoral prospects).

Despite the long line of cases conferring standing on political parties and organizations in voting rights cases, the Secretary grounds her theory of organizational standing on a D.C. Circuit decision which found that a labor union lacked standing to challenge the constitutionality of the Line Item Veto Act. *See Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996). The comparison the Secretary tries to draw is inapt. It is one thing to suggest that an Act concerning the President's line item veto power is insufficiently related to a labor union's mission for standing purposes, *see id*., but to apply that reasoning to a political party or

organization, challenging laws that burden its voters, is a logical leap that contradicts well-settled and directly applicable precedent. *See supra.*

Plaintiffs have also demonstrated representative or associational standing, which allows an organization to bring suit when: "(1) the association's members [or constituency] would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members." *Benkiser*, 459 F.3d at 587 (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). Each Plaintiff meets this test on behalf of both voters who intend to support Democratic candidates for offices across Texas in the 2020 general election, and also on behalf of the candidates Plaintiffs have endorsed and support. *See* Am. Compl. ¶¶ 8-14.

The Secretary appears to suggest that Plaintiffs must name the individuals on whose behalf they assert associational standing, which misconstrues the pleading standards (along with the associational standing doctrine). The vast body of applicable case law makes clear there is no such requirement. As the Fifth Circuit explained, "[w]e are aware of no precedent holding that an association must set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on lack of associational standing," *Hancock Cty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012), and the Secretary has not identified any authority that imposes her proposed heightened pleading requirement. Further, the Secretary ignores that Plaintiffs have clearly stated that they represent Democratic candidates running for

election in Texas in 2020. Am. Compl. ¶¶ 8-14. Thus, to the extent there is a requirement that they name specific individuals on whose behalf they seek relief, Plaintiffs have satisfied it.[1]

Nor is an organization required to have a formal membership structure to assert standing on behalf of its constituents or supporters. *See Hunt*, 432 U.S. at 345 (finding associational standing satisfied by organization based on indicia of membership); *see also Friends for the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 829 (5th Cir. 1997) (finding associational standing satisfied even though plaintiff did not have formal membership requirements). Plaintiffs have representational standing to sue in the place of their voters and supporters who intend to register to vote and support Democratic candidates on the ballot in Texas in the 2020 general election. Consistent with this doctrine, courts have repeatedly held that, in the voting rights context, "political parties have standing to assert, at least, the rights of its members who will vote in an upcoming election." *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1254 (N.D. Fla. 2016); *see also*, *e.g.*, *Crawford*, 472 F.3d at 951; *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004); *Bay Cty. Democratic Party v. Land*, 347 F. Supp. 2d 404, 422 (E.D. Mich. 2004).

Plaintiffs also have standing on behalf of the candidates they have endorsed and are organized to support. Such candidates would have standing "for similar reasons that the TDP [and party committees] ha[ve] direct standing," because the challenged law threatens "election prospects and campaign coffers." *Benkiser*, 459 F.3d at 587. Where a candidate has standing to assert a claim, the candidate's party has associational standing to do so on his behalf—the

---

[1] The Secretary cites *Summers v. Earth Island Institute*, 555 U.S. 488, 499 (2009) and *City of Kyle*, 626 F.3d at 237 in support of this argument, but neither stands for the proposition that Plaintiffs must name its members in the complaint. At most these cases examine the sufficiency of evidence of injured members; the absence of such evidence at the pleading stage is not grounds for dismissal. *See*, *e.g.*, *Ala. Legislative Black Caucus v. Alabama*, 135 S. Ct. 1257, 1269 (2015).

candidate's "interests are fully represented by the [party]; after the primary election, a candidate steps into the shoes of [their] party, and their interests are identical. As well, the type of relief sought, *i.e.*, an injunction, will inure to [the candidate's] benefit." *Id.* at 588 (citations omitted).

### 2. Plaintiffs established statutory standing.

The Secretary suggests that organizations are categorically barred from suing under Section 1983; yet that theory contradicts settled law. The statutory standing inquiry asks courts "to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). In other words, statutory standing requires that the plaintiff bringing suit under a statute establish that she is "within the class of plaintiffs whom Congress has authorized to sue." *Id.* at 127-28

The Fifth Circuit has expressly interpreted Section 1983 to allow suits by organizations that have established associational standing. *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 551 (5th Cir. 2010) (nonprofit had standing to assert § 1983 claims on behalf of members in seeking prospective declaratory and injunctive relief); *see also Church of Scientology of Cal. v. Cazares*, 638 F.2d 1272, 1278 (5th Cir. 1981); *Allee v. Medrano*, 416 U.S. 802, 819 n.13 (1974); *Jornaleros de Las Palmas v. City of League City*, 945 F. Supp. 2d 779, 800 (S.D. Tex. 2013). The Secretary relies on cases that merely illustrate the general prohibition on individual, third-party standing, but they are inapposite because they do not involve organizations that assert associational standing. As explained, *see supra* B.1., Plaintiffs have demonstrated associational standing, which forecloses the Secretary's "statutory standing" defense, and easily distinguishes this case from the authorities the Secretary cites.

**C.**     **Plaintiffs have a private right of action to sue under the Civil Rights Act.**

The Fifth Circuit has recognized a private right of action under the Civil Rights Act since the 1940's. *Chapman v. King*, 154 F.2d 460, 464 (5th Cir. 1946); *Mitchell v. Wright*, 154 F.2d 924, 926 (5th Cir. 1946).[2] When Section 1971 of the Civil Rights Act—the provision under which Plaintiffs proceed here—was amended in the 1950's to include a provision authorizing the Attorney General to sue to enforce the statute, speakers were clear that the amendments were meant to *enhance* the Act, *not* take away individuals' congressionally recognized private right to sue.[3] After Congress amended the Act, the Fifth Circuit continued to recognize a private right of action under Section 1971. *Reddix v. Lucky*, 252 F.2d 930, 934 (5th Cir. 1958); *Bell v. Southwell*, 376 F.2d 659, 660 (5th Cir. 1967).

Interpreting the Act to include a private right of action is also supported by the other courts that have either explicitly rejected the Secretary's argument or recognized a private right of action. *See Schwier v. Cox*, 340 F.3d 1284, 1296-97 (11th Cir. 2003); *Taylor v. Howe*, 225 F.3d 993, 996 (8th Cir. 2000); *Coal. for Educ. in Dist. One v. Bd. of Elections*, 495 F.2d 1090, 1091 (2d Cir. 1974); *Bell*, 376 F.2d at 660; *Reddix*, 252 F.2d at 934; *Delegates to the Republican Nat'l Convention v. Republican Nat'l Comm.*, Case No. SACV 12-00927 DOC(JPRx), 2012 WL 3239903, *5 n.3 (C.D. Cal. Aug. 7, 2012); *Davis v. Commonwealth Election Comm'n*, Case No. 1-14-CV-00002, 2014 WL 2111065, *9-10 (D. N. Mar. I. May 20, 2014); *Common Cause/Ga. v.*

---

[2] The Fifth Circuit adopted the four-part test in *Cort v. Ash*, 422 U.S. 66, 78 (1975), for determining whether a statute includes an implied cause of action. *Till v. Unifirst Fed. Sav. & Loan Ass'n*, 653 F.2d 152, 157 (5th Cir. 1981) (citing *Cort*, 422 U.S. at 78).

[3] *See Civil Rights Act of 1957: Hearings on S. 83, an amendment to S. 83, S. 427, S. 428, S. 429, S. 468, S. 500, S. 501, S. 502, S. 504, S. 505, S. 508, S. 509, S. 510, S. Con. Res. 5 Before the Subcomm. on Constitutional Rights of the Senate Comm. on the Judiciary*, 85th Cong. 73, 203, 1; 60-61, 67-73 (1957) (statement and testimony of the Hon. Herbert Brownell, Jr., Attorney General of the United States)

*Billups*, 406 F. Supp. 2d 1326, 1371 (N.D. Ga. 2005). While the Secretary strings together cases, some unpublished and all out-of-circuit, that summarily conclude—sometimes only in a footnote—that a private right of action does not exist (*McKay*, which is the primary authority the Secretary cites, addresses this topic in a single, 12-word sentence), that authority does not take into account Congress's intent nor does it undertake any kind of reasoned analysis, and it wholly ignores Supreme Court precedent that recognizes private rights of action in other sections of the statute even when they also provide for enforcement by the Attorney General. *See Schwier*, 340 F.3d at 1296-97 (citing *Allen v. State Board of Elections*, 393 U.S. 544 (1969), and *Morse v. Republican Party of Va.*, 517 U.S. 186 (1996)); *see also Sierra Club v. Andrus*, 610 F.2d 581 at 589 (9th Cir. 1979) (citing *Allen* to hold that "the Attorney General's enforcement responsibilities were not meant to foreclose the implication that private actions are authorized to promote the purposes of" the statutory provisions in that case), *vacated on other grounds by Sierra Club v. Watt*, 451 U.S. 965 (1981).

*Alexander v. Sandoval*, 532 U.S. 275 (2001), upon which the Secretary heavily relies, provides ample support for finding a private right of action under Section 1971. In *Sandoval*, the Supreme Court considered whether a regulation ("§ 602") promulgated under Title VI of the Civil Rights Act conferred an implied right of action. *Id*. at 286. The Court held it did not, because *that* regulation merely authorized federal agencies "to effectuate" other provisions "by issuing rules, regulations, or orders of general applicability." *Id*. at 288. But in doing so, the Court contrasted § 602 with the language from another regulation ("§ 601") that did in fact confer a right of action. *Id*. The rights-creating provision in § 601 stated: "no person in the United States shall . . . be subject to discrimination." *Id.*; *Cannon v. Univ. of Chi.*, 441 U.S. 677, 717 (1979) (finding § 601 conferred private right of action). While the Secretary cites *Sandoval* to suggest that Section 1971 lacks

"rights-creating language," a closer inspection of the regulations reveal the opposite is true: Section 1971 is nearly identical to § 601 in its command prohibiting the violation of individual rights—and in no way resembles § 602—further confirming the statute can be enforced in this way.

The Secretary's appeal to sovereign immunity and statutory standing are similarly groundless because neither applies to a private action under Section 1971 of the Act. This is because the statute, which prohibits the denial of the right to vote because of an immaterial error or omission, is part of a larger statutory scheme "which Congress passed pursuant to its Fifteenth Amendment enforcement power," and which "validly abrogated state sovereign immunity." *OCA*, 867 F.3d at 604; *see also Schwier*, 340 F.3d at 1294 (treating Section 1971 as part of the Voting Rights Act). Sovereign immunity, therefore, "has no role to play here," and offers no shield to a state official sued for violating Section 1971. *OCA*, 867 F.3d at 614.

**D.      The wet signature rule imposes an undue burden on the right to vote.**

The Secretary misapplies the *Anderson-Burdick* standard, mischaracterizes the burden imposed on voters, and invents state interests previously unrecognized by any court as legitimate, much less sufficient to justify burdens on the public's fundamental rights. *Anderson-Burdick* requires courts to weigh "the character and magnitude" of the alleged burden, against the "*precise interests* put forward by the State." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (emphasis added). This assessment must "tak[e] into consideration the extent to which those interests make it necessary to burden [the Plaintiffs'] rights." *Id.* at 428. Any burden, however slight, "must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Stringer v. Pablos*, No. SA-16-CV-257-OG, 2020 WL 532937, at *7 (W.D. Tex. Jan. 30, 2020) *rev'd and remanded sub nom. Stringer v. Whitley*, 942 F.3d 715 (5th Cir. 2019) (quoting *Crawford*, 553 U.S. at 191).

The Secretary attempts to minimize the burden imposed on voters by referring generally to a signature requirement on registration applications, sidestepping the fact that her directive requires a *wet ink* signature—an entirely new restriction on voter registration that Plaintiffs challenge here. Am. Compl. ¶¶ 16, 21. If election officials determine that the signature was not provided by "wet-ink," the applicant's ability to re-register in time to vote is in jeopardy. *See* Am. Compl. ¶ 19. Thus, the burden also includes the risk of complete and total disenfranchisement. *Cf. Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1321 (11th Cir. 2019) (finding rejection of absentee ballots because of alleged signature mismatch imposed "at least a serious burden on the right to vote.").

Ignoring this distinction—between requiring a signature generally, and requiring a wet signature specifically—the Secretary obfuscates the State's complete lack of interest in enforcing her rule by asserting interests that are unrelated to *wet* signatures. The Secretary claims, for instance, that the rule helps maintain accurate voter rolls and combat voter fraud, ECF No. 13 at 16, but has admitted in other litigation that the State does not use the physical, wet-ink signatures for any purpose. *See Pablos*, 320 F. Supp. 3d at 873-74, 895, 899. More specifically, the Secretary has admitted that election officials are not expected to, and typically do not, analyze or compare wet signatures. *Id.* Thus the notion that wet signatures—as opposed to electronic or imaged signatures—advance the State's interest in maintaining accurate voting rolls or preventing fraud is contrived entirely for this lawsuit.

The Secretary next argues that Texas has an interest in enforcing the wet signature rule because it is a symbol of the seriousness of voting. ECF No. 13 at 16-17. To the extent that a desire to "maintain[] the solemnity of voter registration," can justify *any* burden on the right to vote—a dubious proposition unsupported by any authority—the Secretary's own contradictory practices

suggest this is yet another contrived interest. The Secretary has admitted that the State already accepts electronically imaged signatures from registration applications compiled by State agencies. *See Pablos*, 320 F. Supp. 3d at 874. These rationales simply confirm that the wet signature rule imposes an arbitrary restriction on the franchise while failing to advance any plausible state interest.

**E.      The wet signature rule subjects voters to arbitrary enforcement.**

The Secretary's challenge to Plaintiffs' equal protection claim is based on a factual dispute, which is inappropriate at this stage in these proceedings. Plaintiffs alleged that no standards exist to inform the registrars' signature review and thus the wet signature rule results in the arbitrary denial of voter registration applications, and by extension the right to vote. Am. Compl. ¶¶ 20, 34. While the Secretary's Motion contests this claim, she fails to explain how election officials determine whether a signature complies with the wet signature rule, or what standards they apply. *But see* Texas Election Code. § 31.003 (requiring Secretary to obtain and maintain uniformity in the application of election laws). The Secretary offers only an opinion—"there is no reason to think local officials apply Section 13.002 arbitrarily," ECF No. 13 at 19—and speculation—"[p]erhaps some improper signatures go undetected," *id.*—in response to Plaintiffs' allegations. *Id.* But on a motion to dismiss, the Court must accept Plaintiffs' well pleaded facts as true, "viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co.*, 369 F.3d at 467. The Court may not dismiss this claim because the Secretary *thinks* officials will not arbitrarily follow her guidance. *See Twombly*, 550 U.S. at 570.

**F.      The wet signature rule jeopardizes the integrity of the electoral process and therefore violates Plaintiffs' due process rights.**

The Secretary attempts to portray her unconstitutional rule—which ultimately results in the disenfranchisement of eligible voters—as a "garden variety" election dispute, ECF No. 13 at 21,

but her oversimplified interpretation fails because the wet signature rule finds no support in any body of law and "undermine[s] the basic fairness and integrity of the democratic system," *Duncan v. Poythress*, 657 F.2d 691, 699 (5th Cir. 1981).[4] Federal due process guarantees protect against state election practices that operate to deny eligible voters their fundamental right to vote. *Id*. at 699-705; *cf. Bell*, 376 F.2d 659, 662 (5th Cir. 1967).

Litigants appropriately invoke the Due Process Clause to challenge fundamentally unfair voting systems—even when they do not result in the cancellation of elections, ECF No. 13 at 21— and despite the fact that the offending actions implicate the enforcement of state laws and procedures. *See*, *e.g.*, *League of Women Voters v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008). The Sixth Circuit has held, for instance, that allegations of non-uniform rules, standards, and procedures that result in massive disenfranchisement supported a claim for a violation of substantive due process. *See id*. Other courts agree. *See also*, *e.g.*, *Briscoe v. Kusper*, 435 F.2d 1046, 1055 (7th Cir. 1970) (finding local board of elections violated voters' substantive due process rights by adopting new interpretation of election code without notice and refusing to count votes); *Curling v. Raffensperger*, 403 F. Supp. 3d 1311, 1337 (N.D. Ga. 2019) (holding plaintiffs stated due process claim based on allegations that use of unsecured voting machines burdened the right to vote, and recognizing the Due Process Clause "affords protection against the disenfranchisement of a state electorate in violation of state election law.") (quoting *Duncan*, 657 F.2d at 708).

Far from a "'garden variety' election dispute," Plaintiffs' claim alleges that the Secretary invented a new rule for voter registration applications—just five days before a voter registration

---

[4] *Duncan*, a Fifth Circuit case, which relies on Supreme Court and other Fifth Circuit precedent, 657 F.2d at 699, 702 (citing *Bell*, 376 F.2d at 659), controls Plaintiffs' due process claim. The Secretary is wrong to argue otherwise. ECF No. 13 at 21 n.3.

deadline—that was (and still is) unrecognized in any state election law. The Secretary's rule resulted in the rejection of potentially thousands of voter registration applications, and many more voters will be denied the opportunity to register and vote in future elections absent an injunction. *See* Am. Compl. ¶¶ 41-44. The actions and the resulting burden on the franchise implicate both the Equal Protection and Due Process Clauses, and, contrary to the Secretary's unsupported claim, there is no impediment to voting rights plaintiffs asserting claims under both provisions. *See*, *e.g.*, *League of Women Voters*, 548 F.3d at 478 (finding plaintiffs stated both equal protection and substantive due process claims); *Curling*, 403 F. Supp. 3d at 1345 (same).

Finally, the Court should not defer to the Secretary's interpretation that Texas Election Code § 13.002(b) includes a wet signature requirement for two reasons: (1) the Secretary's interpretation cannot change a statute's plain language; and (2) the interpretation must be reasonable. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747-48 (Tex. 2006). In adopting the wet signature rule, the Secretary was not interpreting ambiguous statutory language; the law clearly allows a voter to submit a "copy" of their voter registration form, Texas Election Code §§ 13.002(a), 13.143(d-2). Indeed, nowhere in the body of Texas election law is there a single reference to wet signatures. Accordingly, the Secretary's unreasonable, arbitrary rule that unlawfully burdens the franchise is without precedent and entitled to no deference.

## IV.    CONCLUSION

Plaintiffs respectfully request that the Court deny the Secretary's Motion to Dismiss, ECF No. 13.

Dated:  March 13, 2020                          Respectfully submitted,


                                                /s/ *Uzoma Nkwonta*
                                                Marc E. Elias*
                                                Uzoma Nkwonta*
                                                Emily Brailey*
                                                Stephanie Command*
                                                PERKINS COIE LLP
                                                700 Thirteenth St., N.W., Suite 800
                                                Washington, D.C. 20005-3960
                                                Telephone: (202) 654-6200
                                                Facsimile: (202) 654-9959
                                                melias@perkinscoie.com
                                                unkwonta@perkinscoie.com
                                                ebrailey@perkinscoie.com
                                                scommand@perkinscoie.com

                                                Skyler M. Howton
                                                TX State Bar No. 24077907
                                                PERKINS COIE LLP
                                                500 N. Akard St., Suite 3300
                                                Dallas, TX 75201
                                                Telephone: (214) 965-7700
                                                Facsimile: (214) 965-7799
                                                showton@perkinscoie.com

                                                *Counsel for the Plaintiffs*

                                                Chad W. Dunn
                                                TX State Bar No. 24036507
                                                Brazil & Dunn, LLP
                                                4407 Bee Caves Road, Suite 111
                                                Austin, Texas 78746
                                                Telephone: (512) 717-9822
                                                Facsimile: (512) 515-9355
                                                chad@brazilanddunn.com

                                                *Counsel for Plaintiff Texas Democratic Party*

                                                *Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 13, 2020, I electronically served the foregoing via ECF on all counsel of record.

/s/ *Uzoma Nkwonta*
Uzoma Nkwonta