# IN THE UNITED STATES DISTRIC COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| TEXAS DEMOCRATIC PARTY; DSCC; and DCCC, *Plaintiffs*, v. RUTH R. HUGHS, in her official capacity as the Texas Secretary of State, *Defendant*. | CIVIL ACTION NO. 5:20-cv-00008-OLG |

## THE TEXAS SECRETARY OF STATE'S
## REPLY IN SUPPORT OF HER MOTION TO DISMISS

**TABLE OF CONTENTS**

Table of Contents ............................................................................................................................................ ii

Argument ......................................................................................................................................................... 3

    I.    The Secretary of State is Not a Proper Defendant .............................................................. 3

        A.  Sovereign Immunity Bars This Suit ................................................................................ 3

        B.  Plaintiffs Lack Standing to Sue the Secretary ............................................................... 5

    II.   Plaintiffs Lack Standing to Challenge Section 13.002 ......................................................... 6

    III.  Plaintiffs' Statutory Claim Fails ............................................................................................... 9

    IV.  Section 13.002 Is Constitutional ............................................................................................ 14

Conclusion ..................................................................................................................................................... 15

Certificate of Service .................................................................................................................................... 16

**ARGUMENT**

I.    **The Secretary of State is Not a Proper Defendant**

    A.    **Sovereign Immunity Bars This Suit**

Sovereign immunity bars this suit because the Secretary does not enforce Section 13.002. *City of Austin v. Paxton*, applied sovereign immunity because, although the defendant could enforce the challenged statute, 943 F.3d 993, 998 (5th Cir. 2019), he was not "likely to do" so, *id.* at 1002. Here, the Secretary is not only unlikely but also unable to enforce Section 13.002. *See* ECF 13 at 1–6.

Plaintiffs insist the Secretary creates and interprets rules that bind local officials. *See* ECF 14 at 5, 7. That is legally untrue. *See* ECF 13 at 1–6. This is not a case in which the Secretary has issued a binding regulation that local officials enforce. The Secretary does not have any rulemaking authority relevant to this case, and Plaintiffs do not argue otherwise. *Cf.* Tex. Elec. Code § 62.0115 (requiring the Secretary to "adopt rules providing for publicizing voters' rights"). Nor is it a case in which the Secretary binds local officials to adopt her interpretation of state law.

But even if Plaintiffs were correct, it would be irrelevant. First, the creation of a rule is not a connection to enforcement for purposes of *Ex parte Young*. After all, the Legislature is responsible for the creation of statutes, but plaintiffs challenging the constitutionality of statutes do not sue the Legislature. *See Ex parte Young*, 209 U.S. 123, 159 (1908); *Hall v. Louisiana*, 974 F. Supp. 2d 944, 949, 954 (M.D. La. 2013) (holding a plaintiff could not challenge a statute "enacted by the Louisiana State Legislature" by suing the Legislature because the Legislature did not have a sufficient "connection with the enforcement of the act"). The same principle applies here.

Second, the authority to issue binding interpretations does not strip a government official of sovereign immunity. Consider, for example, the Office of Legal Counsel ("OLC") in the federal Department of Justice. That office "provid[es] binding interpretive guidance for executive agencies." *Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 692 n.1 (4th Cir. 2019) (quotation

omitted). But no one contends a plaintiff could use *Ex parte Young* to sue OLC (or its head) over OLC's interpretation of the law. "[F]or this Court to allow [a state official] to remain as a party merely to force him to interpret (as opposed to enforce) a statute consistent with the orders of this Court, would completely contravene the Eleventh Amendment and the Supreme Court's dictations in *Ex parte Young . . . .*" *McBurney v. Mims*, No. 3:09-cv-44, 2009 WL 1209037, at *4 (E.D. Va. May 1, 2009), *aff'd in relevant part*, *McBurney v. Cuccinelli*, 616 F.3d 393, 399–402 (4th Cir. 2010).

Plaintiffs also cite *OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017), *see* ECF 14 at 6, but that case did not consider *Ex parte Young*. *See* ECF 13 at 6 n.2. It held that the statute at issue there abrogated sovereign immunity, which made *Ex parte Young* irrelevant. *See id.* But Plaintiffs do not argue sovereign immunity is generally abrogated here.

Finally, Plaintiffs insist that the Secretary misunderstands her state-law authority. But Plaintiffs ignore *Bullock v. Calvert*, 480 S.W.2d 367 (Tex. 1972), in which the Texas Supreme Court rejected a broad interpretation of "chief election officer." The Secretary of State, "[a]cting as the 'chief election officer' of the state," had "determined that uniformity [could not] be obtained in the holding and conducting of 1972 primary elections without the expenditure of state funds." *Id.* at 369. The Secretary argued he must have "implied" power to do what was necessary to ensure "statutory directives are to be executed with uniformity throughout the state." *Id.* at 372. But the Texas Supreme Court rejected that argument. In an opinion by then-Justice Reavley (a former Secretary of State and current Circuit Judge), the court refused to "read into [Texas law] a delegation of authority to care for any breakdown in the election process." *Id.*; *see also In re Stalder*, 540 S.W.3d 215, 218 n.9 (Tex. App.—Hous. [1st Dist.] 2018) (expressing doubt that a "party chair lacked the authority to then form and act upon her own ultimate legal judgment" despite "having received the Secretary of State's assistance and advice in response to an inquiry"); *Ballas v. Symm*, 351 F. Supp. 876, 888 (S.D. Tex. 1972), *aff'd*, 494 F.2d 1167 (5th Cir. 1974) ("Plaintiff admits that the Secretary's opinions are unenforceable at law and are not

4

binding."). The same principle applies here. Being "chief election officer" does not mean the Secretary can control every aspect of election law in Texas.[1]

### B.     Plaintiffs Lack Standing to Sue the Secretary

Plaintiffs cannot sue the Secretary without identifying what she does to cause their asserted injuries and what she could do differently to redress them. *See* ECF 13 at 3–8. This Court previously dismissed election-law claims against the Secretary "for lack of Article III standing" when plaintiffs failed to "show how the Secretary played a causal role in their injury *and* how she can redress their alleged injury." *LULAC v. Edwards Aquifer Auth.*, No. 5:12-cv-620-OLG, 2014 WL 12495605, at *6 (W.D. Tex. Mar. 31, 2014) (citing *Okpalobi v. Foster*, 244 F.3d 405, 425–26 (5th Cir. 2001) (en banc)). That the Secretary is the "chief election officer" is not sufficient. *Id.* at *4–5. When another official takes the relevant actions affecting the plaintiffs, the plaintiffs' "disagree[ment] with the Secretary's description of the statutory provision" at issue does not confer standing to sue the Secretary. *Id.* at *5.

Plaintiffs' claims fail for the same reasons. First, Plaintiffs emphasize "*the Secretary's [supposed] guidance to election officials*." ECF 14 at 4 (emphasis in original). That is irrelevant. *See LULAC*, 2014 WL 12495605, at *5. No one suggests the Secretary's guidance binds local officials. In fact, Plaintiffs allege the opposite. *See* ECF 13 at 3 (citing ECF 12 ¶ 19). In Texas, local officials necessarily reach their own conclusions about the meaning of the Election Code. Regardless, even binding guidance would not make the Secretary a proper defendant for the reasons explained above.

---

[1] Plaintiffs do not refute the cases explaining that sovereign immunity bars suits in which "the requested relief would require [a court] to go well beyond ordering the Secretary to cease doing something" and instead "require [a court] to order the Secretary to take various forms of affirmative action." *Painter v. Shalala*, 97 F.3d 1351, 1359 (10th Cir. 1996); *see also* ECF 13 at 4. Instead, they mischaracterize four cases as approving "mandatory injunctions" under *Ex parte Young*. ECF 14 at 8. In fact, those cases considered prohibitory injunctions. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("restrained from enforcing an order"); *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 512 (5th Cir. 2017) ("injunctive relief against enforcement"); *Green Valley Special Util. Dist. v. Walker*, 324 F.R.D. 176, 180 (W.D. Tex. 2018) ("enjoin the PUC Officials from decertifying land"); *Hall v. Louisiana*, 983 F. Supp. 2d 820, 826 (M.D. La. 2013) ("forbidding Defendants from enforcing").

Second, Plaintiffs cite *OCA-Greater Houston*, *see* ECF 14 at 4, but that case does not apply when a rule is enforceable through a private cause of action. *See* ECF 13 at 6 n.2. Tellingly, Plaintiffs completely ignore this distinction in their response. In cases involving private rights of action, the Fifth Circuit has been careful to avoid confusing "the coercive impact of the statute itself and the ability—or the absence of ability—of [state officials] to cause or redress the impact of the statute on the plaintiffs." *Okpalobi*, 244 F.3d at 427.

The Secretary's "chief election officer" title is no more relevant here than it was above. ECF 14 at 4. In *City of Austin*, for example, the district court relied on the Attorney General's status as "the chief law enforcement officer of the state." 325 F. Supp. 3d 749, 755 (W.D. Tex. 2018). But the Fifth Circuit reversed. Giving the title no weight, the court instead analyzed the likelihood of enforcement. *See* 943 F.3d at 1003 (finding "it's unlikely the City had standing" because there was no "significant possibility" of future enforcement). And in *Okpalobi v. Foster*, the panel relied on the Governor's role as "chief executive officer," 190 F.3d 337, 346 (5th Cir. 1999), but the en banc court gave that title no weight when it reached the opposite result. 244 F.3d 405, 426–27 (5th Cir. 2001) (en banc).

Third, Plaintiffs point to Section 31.005, but it does not apply here. The Secretary has not "determine[d] that" anyone is "imped[ing] the free exercise of a citizen's voting rights." Tex. Elec. Code § 31.005(b). Plaintiffs do not allege the Secretary should have previously invoked Section 31.005. Regardless, this Court has held that "the Secretary's inaction under Section 31.005 of the Texas Election Code," even when properly alleged, "is not enough to confer Article III standing." *LULAC*, 2014 WL 12495605, at *5–6.

## II.   Plaintiffs Lack Standing to Challenge Section 13.002

Plaintiffs do not have associational standing because they have not identified members with standing. *See* ECF 13 at 6–7. Plaintiffs claim they need not allege "a formal membership structure." ECF 14 at 12. But as Plaintiffs' own citations make clear, they must allege that those individuals they

purport to represent "possess all of the indicia of membership." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977). From Plaintiffs' allegations, one cannot determine "who elected the governing body of the organization and who financed its activities." *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 829 (5th Cir. 1997). Thus, Plaintiffs have not established indicia of membership.

Plaintiffs also disclaim any obligation to identify specific members at the pleading stage. ECF 14 at 11. The Secretary identified binding precedent requiring such identification, *see* ECF 13 at 6, but Plaintiffs purport to distinguish that precedent as limited to the summary judgment stage, *see* ECF 14 at 12 n.1. The Supreme Court recently rejected that distinction: "[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, No. 18-1171, 2020 WL 1325816, at *3 (U.S. Mar. 23, 2020). That is because "the essential elements of a claim remain constant through the life of a lawsuit. What a plaintiff must do to satisfy those elements may increase as a case progresses from complaint to trial, but the legal elements themselves do not change." *Id.*

Plaintiffs rely on an unpublished opinion stating the court was "aware of no precedent holding that an association must set forth the name of a particular member in its complaint." *Hancock Cty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012). But *Hancock*'s distinction between "*the pleading stage*" and "the summary judgment stage" is untenable after *Comcast*. *Id.* at 198 & n.5. Moreover, since *Hancock* was decided, the First Circuit, in an opinion by Justice Souter, has dismissed for lack of standing where "the complaint did not identify any member of the group." *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (Souter, J.) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)). And the Seventh Circuit agrees: A complaint that "does not identify any" injured members "does not satisfy the first requirement of *Hunt*, and therefore has not established associational standing." *Disability Rights Wis., Inc. v. Walworth Cty. Bd. of Supervisors*, 522 F.3d 796, 804 (7th Cir. 2008). That parties failed to call

7

this authority to the attention of the *Hancock* court does not suggest that the Fifth Circuit would today create a circuit split on the issue. *See Gahagan v. USCIS*, 911 F.3d 298, 304 (5th Cir. 2018).

Plaintiffs also lack organizational standing. *See* ECF 13 at 7–11. Plaintiffs have a "mission of electing Democrats," ECF 14 at 8, and they argue Section 13.002 "limits the effectiveness of [their] efforts" to elect Democrats, *id.* at 9. As an initial matter, Plaintiffs' allegations do not support their argument. They have not plausibly alleged that Section 13.002 disadvantages Democratic candidates or voters relative to other candidates or voters. *See* ECF 13 at 9. They seem to focus on an "app," but it was developed by a non-partisan entity. *See, e.g.*, ECF 12 at 1 n.1 ("Vote.org").

Moreover, Plaintiffs' focus on the difficulty of accomplishing their *mission* (i.e., electing Democrats), rather than their *activities* (e.g., communicating with voters), is misplaced. "Frustration of an organization's objectives is the type of abstract concern that does not impart standing." *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161–62 (D.C. Cir. 2005) (quotation omitted).

Plaintiffs' theory would open the floodgates to interest-group litigation devoid of actual injuries in fact. For example, if the Texas Legislature cut property taxes in a way that increased the incumbents' popularity, it might "limit the effectiveness" of Plaintiffs' efforts to defeat those incumbents. ECF 14 at 9. But making it more difficult, as a practical matter, for Plaintiffs' preferred candidates to win elections does not confer Article III standing. When a "preferred candidate . . . has less chance of being elected," the "harm" is not "a restriction on voters' rights and by itself is not a legally cognizable injury sufficient for standing." *Becker v. FEC*, 230 F.3d 381, 390 (1st Cir. 2000); *see also Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018) ("[T]his Court is not responsible for vindicating generalized partisan preferences."); *Gottlieb v. FEC*, 143 F.3d 618, 622 (D.C. Cir. 1998).

Finally, Plaintiffs do not have statutory (or prudential) standing because they rely on the rights of third parties. *See* ECF 13 at 11–12. Plaintiffs do not deny that they rely on the voting rights of third parties. Instead, they argue that the limits on third-party standing do not apply when a plaintiff has

associational standing. *See* ECF 14 at 13. First, Plaintiffs do not have associational standing for the reasons explained above. Notably, Plaintiffs do not deny that they cannot rely on the rights of third parties to the extent they assert organizational rather than associational standing. Second, although the Fifth Circuit has entertained associational standing claims under Section 1983, the Secretary preserves the argument that an associational plaintiff "does not have standing to assert the rights of its members" because "the rights [Section 1983] secures [are] personal to those purportedly injured." *League of Women Voters of Nassau Cty. v. Nassau Cty. Bd. of Sup'rs*, 737 F.2d 155, 160 (2d Cir. 1984).

### III.    Plaintiffs' Statutory Claim Fails

The Civil Rights Act does not provide a private cause of action for enforcement of Section 1971. *See* ECF 13 at 12 (collecting cases). Plaintiffs' response rests on irrelevant, overturned precedent.

Plaintiffs claim the Fifth Circuit "recognized [the] private right of action" on which they rely many decades ago. ECF 14 at 14. That is not true. First, none of those cases considered the statutory provision on which Plaintiffs rely: Section 1971(a)(2)(B). *Contrast* ECF 12 ¶ 27, *with Bell v. Southwell*, 376 F.2d 659, 660–61 (5th Cir. 1967), *Reddix v. Lucky*, 252 F.2d 930, 934 (5th Cir. 1958), *Mitchell v. Wright*, 154 F.2d 924, 925 (5th Cir. 1946), *and Chapman v. King*, 154 F.2d 460, 461 (5th Cir. 1946). Indeed, the provision did not even exist until 1964, long after Plaintiffs' main cases were decided. *See* Civil Rights Act of 1964, Pub. L. No. 88-352, § 101(a), 78 Stat. 241. The 1957 legislative history Plaintiffs cite is irrelevant for the same reason. *See* ECF 14 at 14 & n.3.

Second, none of Plaintiffs' cases considered whether there was a private cause of action. It seems the issue was never raised, perhaps because each plaintiff had other claims that might have supported the same relief. *See Reddix*, 252 F.2d at 933–34; *Bell*, 376 F.2d at 660; *Mitchell*, 154 F.2d at 925; *Chapman*, 154 F.2d at 461. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (quotation

omitted). Decisions that "never squarely addressed the issue," but "at most assumed" an answer, are not binding "by way of *stare decisis*." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993).

Third, even if those cases were on point, they would no longer be binding. *Sandoval* refused to "revert . . . to the understanding of private causes of action that held sway 40 years ago." 532 U.S. at 287. This Court should decline the same invitation.[2]

Plaintiffs' string cite of out-of-circuit precedent does not include a single case holding that Section 1971(b)(2)(A) created an implied private cause of action. *See* ECF 14 at 14–15.[3]

The closest Plaintiffs get is *Schwier v. Cox*, which ruled that Section 1971 can be enforced *through Section 1983*. *See* 340 F.3d 1284, 1297 (11th Cir. 2003). Whether Section 1971 "may be enforced through § 1983 is a different inquiry than that involved in determining whether a private right of action can be implied from" Section 1971(a)(2)(B). *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (quotation omitted). Here, Plaintiffs do not use Section 1983 to support their Section 1971 claim. *Contrast* ECF 12 ¶¶ 26–30 (not citing Section 1983 for Count I), *with id.* ¶¶ 31–44 (citing Section 1983 for Counts II–IV); ECF 14 at 14–16 (not citing Section 1983). More than an accidental forfeiture, Plaintiffs' decision was a strategic and intentional waiver. They should be held to it.[4]

---

[2] For the same reason, Plaintiffs' suggestion that the *Cort* test still controls is incorrect. *See* ECF 14 at 14 n.2. "Many courts have explicitly recognized that the four-prong test in *Cort* has been overruled." *Valencia v. Miss. Baptist Med. Ctr., Inc.*, 363 F. Supp. 2d 867, 875 n.7 (S.D. Miss. 2005). At the very least, it has been "clarified" and "curtailed" in significant ways. *Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606, 615 (N.D. Tex. 2016).

[3] Plaintiffs also argue Section 1971(a)(2)(B) "is nearly identical to § 601," a statute found to create an implied private cause of action in *Cannon v. University of Chicago*, 441 U.S. 677 (1979). Not so. Section 601 has "'rights-creating' language . . . . that focus[es] on . . . individuals protected." *Sandoval*, 532 U.S. at 288–89; *see* 42 U.S.C. § 2000d ("No person . . . shall . . . be subjected to discrimination . . . ."). Section 1971(a)(2)(B), by contrast, "focus[es] on the person regulated." *Sandoval*, 532 U.S. at 289; *see* 52 U.S.C. § 10101(a)(2)(B) ("No person acting under color of law shall . . . .").

[4] Plaintiffs' strategic choice was to forgo reliance on Section 1983 in order to respond to the Secretary's argument that sovereign immunity bars Count I. *See* ECF 13 at 14. Plaintiffs contend that sovereign immunity has been abrogated. *See* ECF 14 at 16. That is wrong for the reasons explained below, but for now, the point is that Plaintiffs would not be able to make that argument if they were relying on Section 1983 to enforce Section 1971 because binding precedent establishes that Section 1983 does not abrogate sovereign immunity. *See Quern v. Jordan*, 440 U.S. 332, 341 (1979). Thus, Plaintiffs made

In any event, Section 1983 would not allow a private plaintiff to enforce Section 1971(a)(2)(B). Section 1971 does not create a federal right, *see Gonzaga Univ.*, 536 U.S. at 290; ECF 13 at 12–14, and it provides a detailed remedial scheme inconsistent with Section 1983 suits. *See* ECF 13 at 12, 14. For example, procedural protections like the ability to request a three-judge district court in Section 1971 suits are not available under Section 1983. *See* 52 U.S.C. § 10101(g). "Courts should presume that Congress intended that the enforcement mechanism provided in the statute be exclusive." *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999) (en banc).

*Schwier*'s contrary conclusion is not persuasive. First, *Schwier* focused on Section 1971's reference to "the right of any individual to vote," 340 F.3d at 1296, without considering the argument that a reference to a preexisting right is not "'rights-creating' language." *Sandoval*, 532 U.S. at 288; *see* ECF 13 at 13. Thus, *Schwier* is not precedent against the Secretary's argument. *See Cooper Indus.*, 543 U.S. at 170.

Second, *Schwier* did not grapple with *Sandoval*, which it limited to a "see also" citation, and emphasized legislative history. *See* 340 F.3d at 1295–96. But as Judge Lynn has explained, *Sandoval* requires that "[l]egislative history and contemporaneous legal context [be] eschewed in favor of plain-language interpretation." *Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606, 615 (N.D. Tex. 2016), *aff'd*, 682 F. App'x 310, 311 (5th Cir. 2017) (per curiam) (affirming "[e]ssentially for the reasons stated in the district court's comprehensive and well-reasoned opinion").

Third, *Schwier* relies on the repudiated reasoning from *Allen v. State Bd. of Elections*, 393 U.S. 544 (1969). *See Schwier*, 340 F.3d at 1294; ECF 14 at 15. *Allen* exemplifies the methodology the Supreme Court has abandoned in favor of "a far more cautious course before finding implied causes of action." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017), which is why Westlaw displays *Allen* with a red flag signifying its "[a]brogation." *Allen*, 393 U.S. 544.

---

the calculated decision not to rely on Section 1983 for their Section 1971 claim.

11

Fourth, *Schwier* misunderstands the history of Section 1971(a)(2)(B). That provision was part of the Civil Rights Act of 1964. *See* Civil Rights Act of 1964, § 101(a), 78 Stat. 241. Thus, it is not true that "plaintiffs could and did enforce" that provision "from the enactment of § 1983 in 1871 until 1957." *Schwier*, 340 F.3d at 1295. Nor is it accurate to characterize Section 1971(a)(2)(B) as part of the Voting Rights Act, which was not enacted until 1965. *But see* ECF 14 at 16 (relying on *Schwier*'s treatment of "Section 1971 as part of the Voting Rights Act"); *Schwier*, 340 F.3d at 1294–97.[5]

Finally, even if Section 1971(a)(2)(B) created a private cause of action, it would belong to voters, not artificial entities like Plaintiffs. As the Secretary previously explained, Plaintiffs lack statutory or prudential standing. *See* ECF 13 at 14. Without explanation, Plaintiffs assert that statutory standing does not "appl[y] to a private action under Section 1971." ECF 14 at 16. That does not make sense. To the extent Section 1971 implicitly creates a private cause of action, the court should determine to whom Congress gave that cause of action. If it was given to voters, rather than political entities, then Plaintiffs lack statutory standing. And even if it were a question of prudence, rather than statutory interpretation, Plaintiffs have not satisfied the prudential requirements. *See* ECF 13 at 12.

Also, sovereign immunity bars any claim under Section 1971(a)(2)(B) against the State, including the Secretary in her official capacity. *See* ECF 13 at 14. Plaintiffs do not dispute the Secretary's argument that *Ex parte Young* does not apply. Instead, they argue that sovereign immunity has been abrogated. *See* ECF 14 at 16. This supposed implied private cause of action does not clearly abrogate sovereign immunity. Plaintiffs make the same "fatal logical leap" that the Fifth Circuit

---

[5] Plaintiffs' other citations are no more helpful. *See* ECF 14 at 14–15. A district court "bound to apply *Schwier*" provides no additional authority. *Common Cause/Ga. v. Billups*, 406 F. Supp. 2d 1326, 1371 (N.D. Ga. 2005). A case in which the "Defendants d[id] not dispute" the existence of a private right of action under a different provision does not establish a private right of action under Section 1971(a)(2)(B). *Delegates to Republican Nat'l Convention v. RNC*, No. 8:12-cv-00927, 2012 WL 3239903, at *5 (C.D. Cal. Aug. 7, 2012). And *dicta* discussing *Schwier* from a non–Article III court considering a different statutory provision is not persuasive. *See Davis v. Commonwealth Election Comm'n*, No. 1-14-cv-00002, 2014 WL 2111065, at *25 (D. N. Mar. I. May 20, 2014) (denying relief under Section 1971(a)(2)(A)), *aff'd* 844 F.3d 1087, 1095 (9th Cir. 2016).

rejected in *Ysleta Del Sur Pueblo v. Laney*, 199 F.3d 281, 287 (5th Cir. 2000). Because Section 1971 applies primarily to local officials, who do not enjoy sovereign immunity, there is no reason to think that a supposed intent to create a private cause of action would also signify an intent to abrogate sovereign immunity. "The statute could easily be determined to provide [plaintiffs] an implied private cause of action against any party other than a state while reserving for the United States a cause of action . . . against any party, including a state." *Id.*

The Fifth Circuit's holding in *OCA-Greater Houston* does not apply. It considered only the Voting Rights Act of 1965, not this provision, a part of the Civil Rights Act of 1964. (To the extent *OCA-Greater Houston* applies, the Secretary preserves the argument it was wrongly decided.) Section 1971(a)(2)(B) does not "unequivocally express" a congressional "intent to abrogate [sovereign] immunity." *Ysleta*, 199 F.3d at 286. It does not mention States. *Cf. Fitzpatrick v. Bitzer*, 427 U.S. 445, 449 n.2, 453 n.9 (1976) (finding a different provision of the Civil Rights Act abrogated immunity because it was later amended to clearly cover States). Moreover, Section 1971(a)(2)(B) was meant to be enforced by the Attorney General, against whom sovereign immunity is not a defense. *See Alden v. Maine*, 527 U.S. 706, 755–56 (1999). Plaintiffs cite no cases suggesting otherwise.

Moreover, abrogation through Section 1971(a)(2)(B) would not be congruent and proportional to "any pattern or practice of unconstitutional conduct." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997); *see Allen v. Cooper*, No. 18-877, 2020 WL 1325815, at *6 (U.S. Mar. 23, 2020). Section 1971 covers far more than constitutional violations because it is tied to "State law," not the Equal Protection Clause. 52 U.S.C. § 10101(a)(2)(B). Congress considered evidence that local officials unequally applied registration requirement to disenfranchise African-Americans. *See, e.g.*, H.R. REP. NO. 88-914, 1964 U.S.C.C.A.N. 2391, 2394, 2490 (1963). For abrogation, "[i]t would make no sense to consider constitutional violations" by local officials "when only the States are the beneficiaries of the Eleventh Amendment." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 369 (2001). And evidence of bad-faith,

13

unequal application of the law does not justify abrogation for neutral interpretations of state law that are applied equally to everyone *See City of Boerne*, 521 U.S. at 529–35. Here, there are no allegations of racial discrimination or bad-faith, inconsistent application of Section 13.002.

**IV.     Section 13.002 Is Constitutional**

The requirement that registrants sign their registration applications imposes neither a serious burden under *Anderson-Burdick* nor a threat of disenfranchisement. ECF 13 at 15–17; *see Voting for Am., Inc. v. Steen*, 732 F.3d 382, 387 (5th Cir. 2013). Plaintiffs' Count III should be dismissed.

Plaintiffs' suggestion that the signature requirement will have a more significant impact on certain voters is wrong for three reasons. First, Plaintiffs continue to "conflate the *burden of complying* and the *consequence of not complying*." ECF 13 at 16. Second, even the consequence of not complying is simply having to submit a new application, not automatic ineligibility to vote. *See id.* at 15–16. Plaintiffs suggest "the applicant's ability to re-register in time to vote is in jeopardy," ECF 14 at 17, but applicants are given ten days to submit a new application and have it be considered timely. *See* Tex. Elec. Code § 13.073(c). Third, "what [Plaintiffs] view as the law's several light and heavy burdens are no more than the different *impacts* of the single burden that the law uniformly imposes on all voters." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 205 (2008) (Scalia, J., concurring in the judgment). The Supreme Court has always analyzed "the magnitude of burdens . . . categorically and [has] not consider[ed] the peculiar circumstances of individual voters or candidates." *Id.* at 206.

Plaintiffs' response does not undermine the State's weighty interests. Plaintiffs point to testimony in another case that a Secretary of State employee "d[id]n't know" what "the ink signature on the DPS's physical forms [was] used for as far as voter registration." *Stringer v. Pablos*, 320 F. Supp. 3d 862, 873 (W.D. Tex. 2018), *rev'd and remanded sub nom. Stringer v. Whitley*, 942 F.3d 715 (5th Cir. 2019). That does not establish such signatures are useless "for any purpose." ECF 14 at 17. Having physical signatures on file has obvious benefits for later investigations and prosecutions. *See* ECF 13 at 16. And

14

contrary to Plaintiffs' assertion, the State's interest in solemnity is protected by both physical signatures in ink and physical signatures made in front of law enforcement officers at a DPS location.

Plaintiffs' equal protection claim (Count II) is not plausible. *See* ECF 13 at 17–18. Plaintiffs misunderstand their burden at the pleading stage: They must plausibly allege local officials will engage in arbitrary enforcement. "A formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs' fact-free assertions "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Here, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

Plaintiffs cannot repackage their now-abandoned state-law claim into a substantive due process claim (Count IV). *See* ECF 13 at 18–20. Plaintiffs' reliance on *Duncan v. Poythress*. 657 F.2d 691 (5th Cir. Unit B Sept. 28, 1981), is misplaced. As the Secretary previously explained, later binding precedent has narrowed the concept of substantive due process and makes clear that *Duncan* cannot apply here. Plaintiffs do not respond to any of those cases. They even ignore the Fifth Circuit's rejection of a due process voting claim based on signatures. *See Welch v. McKenzie*, 765 F.2d 1311, 1317 (5th Cir. 1985). Disregarding all post-*Duncan* Fifth Circuit precedent, Plaintiffs rely on distinguishable out-of-circuit precedent. Perhaps a threat to "the voting system at large, " *Curling v. Raffensperger*, 403 F. Supp. 3d 1311, 1341 (N.D. Ga. 2019), or disenfranchisement affecting 10,000 voters in one city alone, *see League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008), is analogous to the "total abrogation of a statutorily-mandated special election" in *Duncan*. *Welch*, 765 F.3d at 1317. Having to physically sign an application does not rise to the same level of constitutional significance.[6]

## Conclusion

The Secretary respectfully requests that the Court dismiss Plaintiffs' claims.

---

[6] *Briscoe v. Kusper*, which considered a defendant's failure to "announc[e] in advance [a] change in policy," is irrelevant. 435 F.2d 1046, 1055 (7th Cir. 1970). Here, Plaintiffs seek prospective relief only, and they do not argue the signature requirement has been insufficiently announced for future elections.

| | |
|---|---|
| Date: March 27, 2020 | Respectfully submitted. |
| | |
| KEN PAXTON | /s/ Patrick K. Sweeten |
| Attorney General of Texas | PATRICK K. SWEETEN |
| | Associate Deputy for Special Litigation |
| JEFFREY C. MATEER | |
| First Assistant Attorney General | WILLIAM T. THOMPSON |
| | Special Counsel for Civil Litigation |
| RYAN L. BANGERT | |
| Deputy Attorney General for Legal Counsel | CORY A. SCANLON |
| | Assistant Attorney General |
| | |
| | OFFICE OF THE ATTORNEY GENERAL |
| | P.O. Box 12548 (MC-076) |
| | Austin, Texas 78711-2548 |
| | Tel.: (512) 936-1414 |
| | Fax: (512) 936-0545 |
| | patrick.sweeten@oag.texas.gov |
| | will.thompson@oag.texas.gov |
| | cory.scanlon@oag.texas.gov |
| | |
| | **COUNSEL FOR THE TEXAS SECRETARY OF STATE** |

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on March 27, 2020, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN