IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TEXAS DEMOCRATIC PARTY; DSCC; and DCCC,  *Plaintiffs*,  v.  RUTH R. HUGHS, in her official capacity as the Texas Secretary of State,  *Defendant*. | CIVIL ACTION NO. 5:20-cv-00008-OLG |

**SUPPLEMENTAL ADVISORY**

The Secretary files this supplemental advisory to address the five topics identified in the Court's July 28, 2020, order. *See* ECF 29 at 3. She acknowledges the Court's concern that there is "a complete disconnect" between the parties "on the issues before the Court," *id.* at 3 n.1, and hopes to eliminate that disconnect through the parties' filings and targeted discovery.

Plaintiffs describe their claims as challenging a "wet signature rule" that the Secretary supposedly created in 2018. ECF 25 ¶ 1. But the Secretary has never promulgated such a rule. The most the Secretary has done is share her interpretation of the Texas Election Code. The Secretary believes that the applications referenced in Plaintiffs' motion for preliminary injunction are not signed for the purposes of Section 13.002. Plaintiffs disagree with that interpretation, but they do not—and cannot—challenge that interpretation under state law in federal court. Thus, the Secretary understands Plaintiffs' claims, in substance, to be as-applied challenges to a Texas statute. *See* ECF 25 ¶ 38 (challenging Section 13.002 "to the extent that" it "impose[s] a wet signature rule"). To be more specific, the Secretary understands Plaintiffs to argue that the signature requirement in Texas Election Code Section 13.002 is unconstitutional (and violates federal statutory law) insofar as it prohibits

applicants from registering to vote by using an "app" to photograph their signatures, electronically transmitting that photograph to a third-party organization, and then having that organization combine the photographed signature with an application to register to vote.

**I.    The Nature of Plaintiffs' Claims**

Plaintiffs' Second Amended Complaint includes four claims based on the Civil Rights Act and the Fourteenth Amendment. *See* ECF 25 ¶¶ 26–44. Plaintiffs characterize all four of their claims as challenges to the "wet signature rule." *E.g.*, ECF 25 ¶ 1. Plaintiffs assert that, pursuant to this rule, "the Texas Secretary of State instructed county registrars to reject over 2,400 voter registration applications" in 2018. *Id.* The focus of Plaintiffs' complaint appears to be a press release from October 2018 and media reports. *See* ECF 25 ¶¶ 1, 18. But as the Secretary's motion to dismiss explained, the sources Plaintiffs cite do not support their contention that the Secretary "instructed" local officials to do anything. *See* ECF 13 at 2–3. Instead, the press release Plaintiffs cite was a warning to voters. The Secretary has disputed Plaintiffs' interpretation of that press release, *see* ECF 13 at 2–3, but accepting *arguendo* Plaintiffs' interpretation, the press release does no more than set forth the Secretary's interpretation of Texas law.[1] It is her interpretation that those applications are not properly signed by the applicant as required by Texas Election Code Section 13.002. And she believes that a website (or the person behind it) is not an eligible "agent" who can "submit an application" on someone else's behalf under Texas Election Code Section 13.003.

In fact, the Secretary has not promulgated an independent "wet signature rule." When the

---

[1] The press release properly noted, among other things, that "[a]ny web site that misleadingly claims to assist voters in registering to vote online by simply submitting a digital signature is not authorized to do so." Texas election officials do not vet voter-registration groups, and they do not provide "authorization." As the press release explained, "online voter registration is not available in the State of Texas." Again, that reflects Texas law. With an exception not relevant here, "an application must be submitted by personal delivery, by mail, or by telephonic facsimile machine." Tex. Elec. Code § 13.002(a). Plaintiffs seem to acknowledge this limitation without challenging it. The "app" they describe still requires faxing or mailing the application. *See* ECF 25 ¶ 17.

2

Secretary promulgates rules, they are published in the Texas Administrative Code. *See* 1 Tex. Admin. Code §§ 81.1–81.29 (rules about voter registration). But the Texas Administrative Code does not address "wet signatures," and Plaintiffs do not challenge any rules contained in the Administrative Code. As a matter of Texas law, there is no separate "wet signature rule" for Plaintiffs to challenge. The requirement that voters sign their voter registration application is imposed by statute, specifically Texas Election Code Section 13.002.

Plaintiffs disagree with the Secretary's interpretation of state law, including Texas Election Code Section 13.002. *See, e.g.*, ECF 25 ¶ 1. But the parties' disagreement about how to interpret Texas law cannot support a claim for relief in federal court. Although Plaintiffs' original complaint argued that the Secretary violated state law, *see* ECF 1 ¶¶ 41–43, Plaintiffs dropped that claim after the Secretary filed a motion to dismiss, *see* ECF 10 at 19–20. In doing so, Plaintiffs appeared to concede that the Supreme Court's decision in *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984), "prevent[s] a federal court from exercising remedial authority in any form if the award of such relief against a nonconsenting state is based on a state law claim." *Lelsz v. Kavanagh*, 807 F.2d 1243, 1252 (5th Cir. 1987).

Thus, Plaintiffs' current claims against the Secretary appear to all be based on the contention that the Secretary violated federal law by issuing a press release that contained the Secretary's understanding of Texas law. The Secretary's understanding is based on a good-faith interpretation of Section 13.002 (among other provisions). The Secretary believes that her understanding of Section 13.002 is correct. As a result, the Secretary believes that Plaintiffs are effectively challenging Section 13.002 as applied.

Plaintiffs also appear to argue that local election officials—none of whom are parties to this case—should not enforce Section 13.002 insofar as it requires a "wet ink signature" or prohibits voters from registering using a smartphone "app" from Vote.org (and perhaps other "apps"). ECF 25 ¶ 17,

p. 18. To be sure, Plaintiffs describe their claims in terms of the supposed "wet signature rule." *See, e.g.*, *id.* at 18. But because the Secretary has not promulgated a separate "wet signature rule" under Texas law, the Secretary interprets Plaintiffs' claims as seeking, in substance, an injunction against enforcement of Section 13.002 (as interpreted by the Secretary and, seemingly, local election officials), a provision that has been in place since 1986. *See* ECF 25 ¶ 38 ("'[T]o the extent that TEX. ELEC. CODE §§ 13.002(a) and 13.143 (d-2) impose a wet signature rule, these laws violate the First and Fourteenth Amendments by imposing undue burdens on the right to vote.").

The Secretary understands Plaintiffs to argue that individuals should be allowed to register to vote by "sign[ing] their name on a piece of paper" other than a voter registration application, "tak[ing] a picture of the signature, and upload[ing] it to" a smartphone "app." ECF 25 ¶ 17. According to Plaintiffs, the organization operating the "app" would then "affix[] the voters' signatures to the application form and" then send "a copy of the application to the county registrar." *Id.* It is in this sense that Plaintiffs seek to "enjoin[] the requirement that Texans sign their voter registration applications." ECF 27 at 1. Under Plaintiffs' proposed system, would-be voters would not sign their own applications. They would sign other pieces of paper and then a third-party organization would "affix[]" the signature to the application. ECF 25 ¶ 17.

In the Secretary's view, the Texas Election Code has prohibited such a system since at least 1986.[2] *See* Tex. Elec Code § 13.002(b) ("A registration application must be in writing and signed by the applicant."); Tex. Elec. Code § 13.003 (limiting the agents who can submit an application on behalf

---

[2] Plaintiffs claim this case presents "a straightforward legal question . . . which this Court effectively answered two years ago in *Stringer v. Pablos*, 320 F. Supp. 3d 862, 895-97 (W.D. Tex. 2018)." ECF 28 at 1. But this case is legally and factually distinct. *Stringer* involved a challenge under the NVRA and the Equal Protection Clause based on DPS's alleged failure to offer a means for simultaneous voter registration with online driver license renewal and changes of address. In *Stringer* the "electronic signature" at issue was obtained at DPS and physically signed by the individual using an electronic stylus on a DPS signature capture pad in the presence of a DPS official. That procedure is not equivalent to the "app" procedure Plaintiffs here propose.

of a registrant to "the applicant's spouse, parent, or child"); Acts 1985, 69th Leg., ch. 211, § 1, https://lrl.texas.gov/scanned/sessionLaws/69-0/SB_616_CH_211.pdf (codifying the Election Code with those provisions). To the Secretary's knowledge, no Texas election official had ever applied Section 13.002 to allow registration through an "app" process like Plaintiffs seek, at least before the events giving rise to this lawsuit. That is why the Secretary described this case as "challenging a provision that has been in place for years" and as an attempt to "fundamentally alter" voter registration in Texas. ECF 27 at 1, 6.

## II. The Secretary's Defenses

The Secretary intends to rely on the defenses contained in her motion to dismiss and her forthcoming answer, including the following:

- The legality of the Secretary's actions under both federal and state law

- The falsity of Plaintiffs' factual contentions

- Sovereign immunity

- Lack of Article III standing

- Lack of statutory standing

- Lack of a private cause of action

- Failure to state a claim

- Abstention

- Plaintiffs' requested injunction does not comply with Federal Rule of Procedure 65 or the equitable principles governing such relief, including laches and *Purcell*

## III. Issues Requiring Discovery

Important questions about Plaintiffs' proposed voter-registration system will require discovery. For example, Plaintiffs argue that a smartphone "app" from an organization called Vote.org should be an acceptable method of registration and that the supposed "wet signature rule" is the only

barrier to using that "app." Plaintiffs also point to a website operated by the Texas Democratic Party that Plaintiffs would allegedly use similarly. *See* ECF 26-1 at 9; 26-6 ¶ 22. Plaintiffs' Application for Preliminary Injunction describes the functions of the "app" as follows:

> The app allowed applicants to provide information through their smartphones which would auto-populate into a voter registration form. **The voters would then sign their name on a piece of paper, take a picture of their signature**, and upload it to the app. Once the organization received the uploaded information, **it affixed the voters' signatures to the application form** and faxed and mailed a copy of the application to the county registrar in accordance with the law.

ECF 26-1 at 4 (emphases added) (citations omitted).

Presumably, Plaintiffs intend to present witness testimony regarding the functionality and reliability of the "app" and website, including the process it utilizes to receive information from the voter and then transmit that information to the counties. In any event, the Secretary would need to conduct discovery to examine those issues. Such a process raises serious practical and legal concerns, such as: security measures against hacking and fraud prevention; error rate; steps taken to prevent unauthorized third parties from submitting applications through the "app"; and compliance with Texas Election Code Section 13.003(b)'s limitation on agents. All of these questions affect the viability of Plaintiffs' motion for a preliminary injunction, including any proposed remedy.

Third-party discovery of local officials is likely necessary as well. Local officials are the entities that process voter registration applications. Plaintiffs argue that local election officials followed the Secretary's supposed instructions—as opposed to the Election Code provision itself—in rejecting certain applications in 2018. *See* ECF 26-1 at 4. Discovery into why local officials acted as they did will likely undermine Plaintiffs' assertions. Plaintiffs have themselves included in their exhibits an interview with one county election official and also claim that local election officials "may" reject applications "erroneously and arbitrarily" due to a lack of "guidelines" from the State. ECF 26-1 at 16. Thus, discovery into the standards local officials use is important for rebutting Plaintiffs' theory.

Additionally, Plaintiff attached declarations from five fact witnesses, including three from

representatives of the plaintiff organizations. *See* ECF 26.4–.8. The Secretary seeks to depose each of these declarants.[3] Plaintiffs have also attached a declaration from counsel in this case that includes 18 exhibits. ECF 26.3. The exhibits include articles and studies addressing rates of COVID-19 deaths in Texas, its spread in various locales in the State, reports on new voter registrations in Texas, a report from the United States Postal Service's Office of Inspector General addressing timeliness of ballots mailed during a prior election, and an article containing an interview with Travis County Tax Assessor-Collector and Voter Registrar Bruce Elfant, among other exhibits.

The Secretary will also need to test the accuracy of Plaintiffs' assertions, especially those that go to the Court's subject-matter jurisdiction. *See Aleph Towers, LLC v. Ambit Tex., LLC*, No. 12-cv-3488, 2013 WL 4517278, at *3 (E.D.N.Y. Aug. 23, 2013) ("A district court may order jurisdictional discovery where appropriate to assure itself that jurisdiction is proper."). The Court's previous analysis of standing, for example, depended on the lighter burden Plaintiffs' bore at the pleading stage. *See* ECF 24 at 8–9. But at the preliminary-injunction stage, Plaintiffs bear a heavier evidentiary burden. *See Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017). And some of Plaintiffs' newly filed declarations seem intended to support a broader standing argument than Plaintiffs made at the pleadings stage. *See, e.g.*, ECF 26-5. The Secretary is entitled to test the truthfulness of Plaintiffs' assertions.

## IV. Proposed Discovery

Though Plaintiffs claim the case is a "straightforward legal question" for the Court to decide, their filings have identified myriad topics that will require evaluation and examination through discovery. *See* ECF 28 at 1. In light of the issues raised by Plaintiffs Motion, as set forth in Section III, *supra*, the Secretary will need to conduct discovery prior to a hearing of this matter. At a minimum, the Secretary seeks to depose five of the six declarants in this case, a corporate representative of the

---

[3] The articles and interviews attached to Plaintiffs declaration largely constitute inadmissible hearsay. The Secretary presumes Plaintiffs intend to introduce witness testimony related to each of these topics.

organizations behind any "app" interface and process as set forth in the Plaintiffs Motion, and any witnesses the Plaintiffs intend to call at a hearing.

Moreover, the Secretary seeks to issue "contention interrogatories." As the Court has noted, there appears to be a disconnect between the parties. The Secretary expects that Plaintiffs' answers to her proposed contention interrogatories will help clarify the issues.[4] The Secretary suggests the Court allow for service of up to 10 interrogatories per side with a shortened discovery deadline of 21 days for responses to those interrogatories.

## V.     Proposed Schedule

While Secretary Hughs is cognizant of the Court's concerns expressed in its order about the need to conduct limited discovery, the Secretary will need adequate time to conduct discovery on Plaintiffs' claims and seeks at least "a fair opportunity and a meaningful hearing to present their differing versions of those facts" as required by Federal Rule of Civil Procedure 65(a). *See PCI Transp., Inc. v. Ft. Worth & W. R.R. Co*, 418 F.3d 535, 546 (5th Cir. 2005). That can occur only after Secretary Hughs conducts discovery on Plaintiffs' allegations and marshals her own evidence.

Below the Secretary has provided a proposed compressed schedule for conducting discovery in this case. The Secretary believes that early disclosures by the Plaintiffs of all witnesses and documents they intend to utilize in an injunction hearing in this case is necessary and would allow for more targeted discovery. Thus, the Secretary proposes the following abbreviated schedule:

| Deadline for Plaintiffs to disclose witnesses they intend to utilize at a hearing of this matter and a description of that witnesses' testimony | August 5, 2020 |
|---|---|

---

[4] Of course, the Secretary believes this case should not move forward for the reasons explained in her motion to dismiss and out of principles of abstention. The Secretary identifies this discovery as what is necessary if the Court is inclined to consider Plaintiffs' motion for a preliminary injunction at this stage and has offered a more truncated schedule in view of the Court's concerns.

| Discovery period begins | August 5, 2020 |
| --- | --- |
| Deadline for Plaintiffs to disclose all trial exhibits—other than demonstrative exhibits—they intend to utilize at a hearing of this matter | August 15, 2020 |
| Deadline for Defendants to disclose witnesses they intend to utilize at a hearing of this matter and a description of that witness's testimony | August 20, 2020 |
| Deadline for Defendants to disclose all trial exhibits—other than demonstrative exhibits—they intend to utilize at a hearing of this matter | August 30, 2020 |
| Discovery ends* | September 4, 2020 |
| Deadline for Secretary Hughs's response to Plaintiffs' motion for a preliminary injunction | September 11, 2020 |
| Deadline for Plaintiffs' reply in support of their motion for a preliminary injunction | September 18, 2020 |

\* The parties shall be obligated to produce any witnesses they intend to utilize at a hearing in this matter reasonably available to the opposing side prior to the close of discovery.

VI.     **Conclusion**

The Secretary's position is that the "app" process Plaintiffs describe—grafting a picture of a standalone signature and merging it with a populated form—is not the equivalent of a voter signing a voter application and does not meet the standard of Texas Election Code § 13.002(b). Further, the use of this process isn't excepted from § 13.003, which limits agents who can submit an application on behalf of a registrant to "the applicant's spouse, parent, or child." And although Plaintiffs' claims are cast as attacks on a separate "wet signature rule," the Secretary disputes that such a rule was promulgated, or that it provides a basis for Plaintiffs' claims. Therefore, prior to a hearing on this matter the Secretary seeks to conduct targeted discovery, not only on each one of Plaintiffs' assertions or allegations, but the interworking of the systems they claim should be allowed to register Texans to vote.

| | |
|---|---|
| Date: July 31, 2020 | Respectfully submitted. |
| | |
| KEN PAXTON | /s/ Patrick K. Sweeten |
| Attorney General of Texas | PATRICK K. SWEETEN |
| | Associate Deputy for Special Litigation |
| JEFFREY C. MATEER | |
| First Assistant Attorney General | TODD LAWRENCE DISHER |
| | Deputy Chief, Special Litigation Unit |
| RYAN L. BANGERT | |
| Deputy First Assistant Attorney General | WILLIAM T. THOMPSON |
| | Special Counsel |
| | |
| | KATHLEEN T. HUNKER |
| | Special Counsel |
| | |
| | CORY A. SCANLON |
| | Assistant Attorney General |
| | |
| | Office of the Attorney General |
| | P.O. Box 12548 (MC-009) |
| | Austin, Texas 78711-2548 |
| | Tel.: (512) 936-1414 |
| | Fax: (512) 936-0545 |
| | patrick.sweeten@oag.texas.gov |
| | will.thompson@oag.texas.gov |
| | kathleen.hunker@oag.texas.gov |
| | cory.scanlon@oag.texas.gov |
| | |
| | **COUNSEL FOR THE TEXAS SECRETARY OF STATE** |

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on July 31, 2020, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN