**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| TEXAS DEMOCRATIC PARTY; DSCC; DCCC, § § § Plaintiffs § § vs. § RUTH R. HUGHS, in her official capacity as § the Texas Secretary of State, § § Defendant. § § | | Civil Action No. 5:20-cv-00008-OLG<br><br>Related to *Stringer v. Cascos*, No. 5:16-cv-00257-OLG |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S SUPPLEMENTAL ADVISORY

This case is not nearly as complicated as the Secretary suggests. There is no dispute that Texas election officials have rejected voter registration applications for lack of a wet-ink signature and will continue to do so in the future, and Plaintiffs have argued that this practice violates federal law. While the factual allegations in the Amended Complaint and Application for Preliminary Injunction attribute this "wet signature" requirement to the Secretary of State's October 4, 2018 press release—which announced that voter registration applications signed with an imaged, rather than wet-ink, signature were invalid—the Secretary's disagreement over the source of the wet signature rule is immaterial. The focus of Plaintiffs' complaint is the rule's enforcement and the consequent rejection of voter registration applications; the question before this Court is whether it violates federal law, notwithstanding its origin. *See* Am. Compl. ¶ 4 ("[E]ven if the wet signature rule had any basis in Texas law (though it does not), it violates the federal Constitution and the Civil Rights Act . . . ."); *Tex. Democratic Party v. Hughs*, --- F. Supp. 3d ---, 2020 WL 4218227, at *2 (W.D. Tex. 2020) ("Plaintiffs further argue that even if state law does impose such a rule, which they dispute, the rule is unconstitutional and the Secretary's enforcement thereof violates

1

federal law."). Any confusion over these straightforward claims resides with the Secretary alone, and certainly does not provide a basis to delay consideration of Plaintiffs' preliminary injunction application or to conduct needless discovery.

### A. Nature of Plaintiffs' claims

Count I of Plaintiffs' Second Amended Complaint alleges that the enforcement of the wet signature rule violates the materiality provision of the Civil Rights Act by denying individuals the right to vote "because of an error or omission" on their voter registration application that "is not material in determining whether" they are qualified to vote. 52 U.S.C. § 10101(a)(2)(B). Registration is a pre-requisite for voting, and applications that do not include a wet signature have been (or will be) denied; thus, the key question is whether the absence of a *wet* signature—as opposed to an electronic or imaged signature—is a material omission. And because the focus of this inquiry is the Secretary's (or the State's) rationale for imposing this rule, discovery from Plaintiffs is entirely unnecessary.

Furthermore, this Court effectively resolved this question in *Stringer I*, where it held that Texas law does not require wet signatures on voter registration applications. *Stringer v. Pablos*, 320 F. Supp. 3d 862, 895-97 (W.D. Tex. 2018), *rev'd on other grounds in Stringer v. Whitley*, 942 F.3d 715 (5th Cir. 2019). That ruling is instructive here—not because Plaintiffs seek to enforce state law as the Secretary suggests, but because the absence of any statutory requirement that voters provide a wet signature on their applications confirms that a *wet* signature is "not material in determining whether [an individual] is qualified" to vote in Texas. At a minimum, the Court can resolve the Civil Rights Act claim without discovery.

Counts II and III allege that the enforcement of the wet signature rule violates the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution because it results in the arbitrarily denial of registration applications, and by extension, the right to vote; it subjects voters

2

to differential treatment based upon the method by which they sign their applications; and it imposes an undue burden on the right to vote. Here, too, these claims turn on the State's rationale for enforcing the wet signature rule—and the absence of any legitimate State interest is dispositive.

The burden on voters is also relevant, to be sure: in determining whether a voting law unduly burdens the franchise, courts apply the *Anderson-Burdick* balancing test, which "weigh[s] 'the character and magnitude of the asserted injury' . . . against 'the precise interests put forward by the State as justifications for the burden imposed by the rule.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788-89 (1983)). But all restrictions, "[h]owever slight [the] burden may appear . . . must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008). Even if the Court assumes the burden on voters is minimal (though it is not), the Secretary must advance a legitimate rationale for requiring individuals to use only wet signatures on voter registration applications. Since this Court has already found that Texas law does not even require wet signatures, *Stringer*, 320 F. Supp. 3d at 895-97, no legitimate State interest can be advanced by rejecting voter registration applications with electronic or imaged signatures. Additional discovery from Plaintiffs is unnecessary to resolve the equal protection claims.

Count IV alleges that the wet signature rule violates the Due Process Clause of the Fourteenth Amendment by unlawfully disenfranchising individuals (potentially thousands) who have complied with all requirements to vote under State law. Plaintiffs argue that enforcing this rule undermines the integrity of the electoral process and renders the State's election procedures fundamentally unfair. Like the previous claims, Count IV can be resolved without further

discovery because there is no dispute that applications without wet signatures have been (or will be) rejected, notwithstanding the fact that State law does not impose any such requirement.

Each cause of action presents a straightforward legal question: whether the Secretary (or the State) can lawfully require voters to register by submitting applications with a *wet* signature when imaged or electronic signatures will suffice. Not only has the Court already answered this question in *Stringer I*, but even if the Secretary were permitted to relitigate the issue, its resolution would not require any discovery from Plaintiffs.

### B. The Secretary has not identified any material factual disputes requiring discovery.

Once again, the Secretary is unable to explain how her proposed discovery can possibly yield any relevant evidence. Contrary to the Secretary's claims, the functionality of Vote.org's app, or the Texas Democratic Party ("TDP") website has nothing to do with the legal question before the Court. Plaintiffs' description of Vote.org's registration program simply provides the factual context and vehicle through which the rejected applications for the 2018 general election came to the Secretary's attention. These online tools are just two examples of alternative avenues through which individuals may sign and submit their voter registration applications; but even if these resources did not exist, no individual or organization can lawfully be required to provide a *wet* signature in order to register to vote. The Secretary cannot demonstrate that the wet signature rule is lawful by poking holes in the functionality of a single app or a website; thus, any proposed discovery into the innerworkings of these online platforms is simply a distraction.

The Secretary's proposed discovery of local election officials is also irrelevant. In seeking to explore "why local officials acted as they did," the Secretary does not identify any relevant (and disputed) factual or legal issues that such discovery would clarify. To the extent the Secretary plans to establish that local officials applied the wet signature rule on their own, and not because of the

Secretary's instructions, this argument fundamentally misunderstands the nature of her official liability. "As chief election officer, the Secretary of State has the duty and authority to maintain uniformity in the application, operation, and interpretation of state election laws, which includes directing, instructing, and ordering local election officials, prescribing statewide procedures, and protecting Texans' voting rights." *Tex. Democratic Party*, 2020 WL 4218227, at *2. The motivations of individual county officials cannot save an unlawful wet signature rule. As for Plaintiffs' allegation that the absence of any uniform guidelines in implementing the wet signature rule may lead to arbitrary enforcement, it is the Secretary—and not individual election officials—who is in the best position to know whether she has issued any such guidance. If she has not, that means counties are left to their own devices in determining what signatures were applied with wet-ink. The parties do not need to explore the internal operations of every county registrar to determine whether uniform standards exist; the fact that the Secretary—the State's chief election official—is not aware of any is telling.

The Secretary also seeks to depose each of Plaintiffs' declarants for unspecified reasons. Yet her filings demonstrate that she does not contest that a wet signature rule exists, or that voter registration applications have been (or will be) denied because of the rule—she simply disputes the source of this requirement, which is irrelevant for the reasons explained above. The Court can determine whether the wet signature rule likely violates federal law, particularly on a preliminary injunction application, without subjecting individual voters to an open-ended deposition with no assurance that the information the Secretary seeks has any bearing on the pending application.

Finally, the Secretary's request for jurisdictional discovery attempts to relitigate issues that this Court resolved in its recent Order denying the Secretary's Motion to Dismiss. This Court held that "[e]ach of the plaintiffs' members who are currently *or will be* registering to vote would have

standing to sue in their own right" since the Secretary does not dispute that the rule exists and "the challenged conduct continues unabated." *Tex. Democratic Party*, 2020 WL 4218227, at *5 (emphasis added). The Court further concluded that "the interests that Plaintiffs seek to protect are germane to their purpose of electing Democrats" and "[a]ny relief granted therein will inure to the members' benefit," therefore "[p]laintiffs have Article III standing to sue the Secretary of State for the relief sought herein." *Id*. The Secretary cannot present any plausible factual scenario in which Plaintiffs would not have associational standing, at the very least, to sue on behalf of their members who will continue to register to vote and will inevitably encounter this rule. The Secretary's vague request to "test[] the truthfulness" of unspecified "assertions" betrays the absence of any disputed, material facts that would alter the outcome of this Court's standing analysis.

### C. Proposed schedule

The Secretary does not need, nor is she entitled to, any discovery to address the legal question at issue in this case. In any event, Plaintiffs' Application for Preliminary Injunction presents several alternative grounds for relief, and if the Court determines that any particular claim relies on disputed facts that would benefit from discovery, the Court may, within its discretion, limit its review to the claims that are sufficiently developed to allow the Court to reach the merits without further delay.

Plaintiffs therefore request that the Court order the Secretary to file her response by **August 13**, with Plaintiffs' reply to be filed by **August 18**. And while Plaintiffs are prepared to participate in a hearing scheduled at the Court's convenience, Plaintiffs do not believe that an evidentiary hearing is either required or necessary. *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987) (finding court was within its discretion to grant a preliminary injunction without an evidentiary hearing because "such a hearing is not required before an injunction, particularly

where factual disputes are lacking" and "defendants do not point to any convincing factual disputes that [the court] deem[ed] material").

The schedule that the Secretary has proposed is not "abbreviated" by any means, but rather attempts to inject four weeks of needless discovery into a time sensitive proceeding, all while failing to identify any material factual disputes that would inform this Court's review of Plaintiffs' Application for Preliminary Injunction. For the narrow and straightforward legal claims that Plaintiffs have presented, an expedited briefing schedule is most appropriate.

Dated: August 3, 2020

Respectfully submitted,

s/ *Uzoma Nkwonta*

| | |
|---|---|
| Chad W. Dunn | Marc E. Elias* |
| TX State Bar No. 24036507 | Uzoma Nkwonta* |
| Brazil & Dunn, LLP | Emily Brailey* |
| 4407 Bee Caves Road, Suite 111 | Stephanie Command* |
| Austin, Texas 78746 | PERKINS COIE LLP |
| Telephone: (512) 717-9822 | 700 Thirteenth St., N.W., Suite 600 |
| Facsimile: (512) 515-9355 | Washington, D.C. 20005-3960 |
| chad@brazilanddunn.com | Telephone: (202) 654-6200 |
| | Facsimile: (202) 654-9959 |
| Robert Leslie Meyerhoff | melias@perkinscoie.com |
| Texas Democratic Party | unkwonta@perkinscoie.com |
| 314 E. Highland Mall Blvd. #508 | ebrailey@perkinscoie.com |
| Austin, TX 78752 | scommand@perkinscoie.com |
| Telephone: 512-478-9800 | |
| rmeyerhoff@txdemocrats.org | Skyler M. Howton |
| | TX State Bar No. 24077907 |
| *Counsel for Plaintiff* | PERKINS COIE LLP |
| *Texas Democratic Party* | 500 N. Akard St., Suite 3300 |
| | Dallas, TX 75201 |
| | Telephone: (214) 965-7700 |
| | Facsimile: (214) 965-7799 |
| | showton@perkinscoie.com |
| | |
| | *Counsel for Plaintiffs* |
| | *Admitted Pro Hac Vice |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2020, I filed a copy of the foregoing Texas Democratic Party, DSCC, and DCCC's Response with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Uzoma Nkwonta*
Counsel for Plaintiffs