# United States Court of Appeals
# for the Fifth Circuit

FILED
JUN 28 2021
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

United States Court of Appeals
Fifth Circuit
FILED
June 4, 2021
Lyle W. Cayce
Clerk

No. 20-50667

TEXAS DEMOCRATIC PARTY; DEMOCRATIC SENATORIAL
CAMPAIGN COMMITTEE; DEMOCRATIC CONGRESSIONAL
CAMPAIGN COMMITTEE,

*Plaintiffs—Appellees,*

versus

RUTH R. HUGHS, IN HER OFFICIAL CAPACITY AS THE TEXAS
SECRETARY OF STATE,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CV-8-OLG

Before HAYNES, GRAVES, and WILLETT, *Circuit Judges.*

JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is REVERSED, and the cause is REMANDED to the District Court for further proceedings in accordance with the opinion of this Court.

No. 20-50667

IT IS FURTHER ORDERED that plaintiffs-appellees pay to defendant-appellant the costs on appeal to be taxed by the Clerk of this Court.

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
June 4, 2021
Lyle W. Cayce
Clerk

No. 20-50667

TEXAS DEMOCRATIC PARTY; DEMOCRATIC SENATORIAL
CAMPAIGN COMMITTEE; DEMOCRATIC CONGRESSIONAL
CAMPAIGN COMMITTEE,

*Plaintiffs—Appellees,*

*versus*

RUTH R. HUGHS, *in her official capacity as the Texas Secretary of State,*

*Defendant—Appellant.*

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CV-8-OLG

---

Before HAYNES, GRAVES, and WILLETT, *Circuit Judges.*

PER CURIAM:*

    The Texas Secretary of State issued a press release that allegedly stated that voter registration applications require a wet signature (the "wet signature rule"). Plaintiffs—the Texas Democratic Party, the Democratic

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

Case 5:20-cv-00008-OLG   Document 46   Filed 06/28/21   Page 4 of 10
Case: 20-50667   Document: 00515916630   Page: 2   Date Filed: 06/28/2021

No. 20-50667

Senatorial Campaign Committee, and the Democratic Congressional Campaign Committee—sued the Secretary in her official capacity, alleging that the Secretary's alleged wet signature rule violates federal law. We hold that, given the binding precedent we have in this area, we must conclude that the Secretary lacks sufficient connection to enforcement of the alleged wet signature rule for the *Ex parte Young* exception to state sovereign immunity to apply. Accordingly, we REVERSE the district court's denial of the Secretary's sovereign immunity defense and REMAND with instructions to dismiss for lack of subject matter jurisdiction.[1]

## I.   Background

The Secretary argues that in Texas, the responsibility of reviewing voter registration applications is divided between her and local county registrars but falls mostly on the local county registrars. We note that the Secretary indisputably holds high-level responsibilities: she applies and interprets the state's Election Code, assists and advises all election authorities regarding the Code, and may take appropriate action against those authorities if they abuse their duties. TEX. ELEC. CODE ANN. §§ 31.003, .004(a), .005. But there are also statutes imputing certain responsibilities on the county registrars, such as the actual registering of voters. In particular, they receive and review voter registration applications for compliance with the Election Code, which, among other requirements, provides that an application must be "in writing and signed by the applicant." *Id.* §§ 13.002(b), .071. The county registrars accept those applications that comply and reject those that do not. *Id.* § 13.072.

---

[1] We also DENY the Secretary's motion to strike the documents in Plaintiffs' addendum as moot.

No. 20-50667

To assist voters in completing their voter registration applications in compliance with the Election Code, an organization seeking to increase voter turnout in Texas released a smartphone application in 2018. Through that app, a voter registration applicant could submit his or her information, which would then be auto-populated into a paper voter registration form. To satisfy the signature requirement, the applicant would sign a piece of paper, take a picture of the signature, and upload that picture to the app. The organization then affixed the applicant's signature to the application form and sent a copy of the application to the applicant's county registrar. Many voters in Texas registered to vote through this app.

Then, five days before the voter registration deadline, the Secretary issued a press release "remind[ing] all eligible Texas voters that online voter registration is not available in the State of Texas." Press Release, Texas Secretary of State, Secretary Pablos Reminds Texans To Exercise Caution When Registering To Vote (Oct. 4, 2018).[2] The press release allegedly required all voter registration applications to include an original, wet signature and made applications submitted through the app invalid. The Travis County registrar allegedly announced that he would not follow the wet signature rule, but reversed course the following day, and rejected hundreds of applications submitted without a wet signature. Several other county registrars allegedly followed the Secretary's wet signature rule.

Plaintiffs, who all expended resources to promote and employ the app, sued the Secretary in her official capacity, alleging that the Secretary's alleged wet signature rule violates the United States Constitution and the Civil Rights Act of 1964 and seeking declaratory relief and an injunction. The

---

[2] The Secretary who issued the release was actually a predecessor to the current one, but the current Secretary has not rescinded the press release addressed here; it is available at: https://www.sos.texas.gov/about/newsreleases/2018/100418.shtml.

3

No. 20-50667

Secretary moved to dismiss the complaint, arguing in part that the court lacked jurisdiction based on state sovereign immunity. The district court denied the motion, concluding, as relevant here, that the *Ex parte Young* exception to sovereign immunity applied. The Secretary timely appealed the denial of sovereign immunity under the collateral order doctrine.

## II.   Jurisdiction & Standard of Review

Plaintiffs asserted jurisdiction under 28 U.S.C. §§ 1331, 1343, and we have jurisdiction to determine our own jurisdiction. *Brownback v. King*, 141 S. Ct. 740, 750 (2021). We review the district court's jurisdictional determination of sovereign immunity de novo. *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393 (5th Cir. 2015).

## III.   Discussion

*Ex parte Young* provides an exception to the general rule preventing private suits against state officials in their official capacity in federal court.[3] *Id.* at 393–94 (referring to *Ex parte Young*, 209 U.S. 123, 155–56 (1908)). For this exception to apply, the state official must have "some connection with the enforcement of the act" in question. *Ex parte Young*, 209 U.S. at 157. We look at the face of the complaint to determine whether there is a sufficient connection.[4] *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 1047 (2021) (mem.).

---

[3] The other exceptions to state sovereign immunity—state waiver and congressional abrogation—are not applicable here. *See NiGen*, 804 F.3d at 393–94. It is undisputed that Texas has not consented to this suit. Also, Congress has not abrogated sovereign immunity for Civil Rights Act claims, as that Act does not provide "unequivocal statutory language" abrogating state sovereign immunity. *Allen v. Cooper*, 140 S. Ct. 994, 1000 (2020); *cf.* 52 U.S.C. § 10101(a)(2)(B).

[4] As a result, even if we were to accept Plaintiffs' addendum to their brief, it is irrelevant for our *Ex parte Young* analysis.

No. 20-50667

We have a series of binding precedents addressing the question of when a state official can be sued under the *Ex parte Young* exception—though they do not provide as much clarity as we would prefer. *See Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (observing that our opinions have ranged from requiring a heightened "special relationship" to a mere "scintilla" of enforcement by the relevant state official), *cert. denied*, 141 S. Ct. 1124 (2021) (mem.).

Notwithstanding some differences in our broad-strokes articulation of the "some connection" requirement, the precedents distill three rules that bind us in this case. First, whatever the merits of this conclusion, our case law is clear that it is not enough that the state official was merely the but-for cause of the problem that is at issue in the lawsuit. *Id.* at 175, 181 (holding that the Attorney General of Texas, whose letter ordering public officials to refrain from advising voters who feared COVID-19 to vote by mail, lacked a sufficient connection to enforcement for *Ex parte Young*).[5] Second, where a statute is being challenged, our precedents necessitate the state official to "have the requisite connection to the enforcement of the particular statutory provision that is the subject of the litigation"—in other words, a provision-by-provision analysis is required. *Id.* at 179. Third, in the particular context of Texas elections, we have held that the Secretary's role varies, so we must identify the Secretary's specific duties within the particular statutory provision. *See id.* at 179–80 (observing that for mail-in ballots, the Secretary and local early voting clerks divide responsibilities); *id.* at 180 (acknowledging that the Secretary's general duties under the Texas Election Code §§ 31.003–.004 are an insufficient connection under *Ex parte Young*).

---

[5] A reasonable person could argue that it makes little sense to be unable to sue the official who caused the problem in question, but we are bound to follow the relevant precedents and, therefore, do not address this point further.

No. 20-50667

The question presented today is whether, given the precedents we are bound by in this area, the Secretary has a sufficient connection to enforce the alleged wet signature rule when county registrars are the ones who review voter registration applications. In light of applying the precedents enacting the three rules articulated above, we are bound to conclude that the answer is "no."

Plaintiffs focus on the Secretary's press release, arguing that it compelled county registrars to reject voter registration applications that lacked wet signatures. However, there is no dispositive difference between the Secretary's press release in this case and the Texas Attorney General's letter to local officials in *Texas Democratic Party*. *Id.* at 175. There, the Attorney General issued a letter, which explained that the Election Code plainly provided that fear of contracting COVID-19 did not qualify as a disability for purposes of receiving a mail-in ballot, ordered local officials to refrain from advising voters who feared contracting COVID-19 from voting by mail, and warned local officials that issuing such advice would subject them to criminal liability. *Id.* We held that the letter did not provide a sufficient connection to enforcement of the Election Code because it (1) was not sent to the plaintiffs, (2) did not make a specific threat or indicate that enforcement was forthcoming, and (3) did not state that the plaintiffs had violated any specific law. *Id.* at 181. All those factors come out the same way here. Accordingly, *Texas Democratic Party* binds us to conclude that the Secretary's alleged wet-signature-rule press release to the general public does not provide a sufficient connection to actual enforcement for *Ex parte Young* to apply to the Secretary.

No. 20-50667

Plaintiffs offer two additional reasons for why the Secretary has a sufficient connection for *Ex parte Young* to apply, but *Texas Democratic Party* forecloses those arguments.[6]

First, Plaintiffs argue that Texas Election Code § 13.121(a), which requires the Secretary to design the official voter registration application form, provides a sufficient connection to enforcing the alleged wet signature rule on those forms. But in their complaint in the district court, Plaintiffs did not plead that the voter registration application form designed by the Secretary specifically required a wet signature. *Cf. id.* at 179–80 (holding that the Secretary had a sufficient connection to enforce an age-based absentee-voting provision in mail-in ballot applications because the Texas Election Code required the Secretary to design the application form for mail-in ballots and the Secretary had designed that form to require applicants to indicate whether they were entitled to an absentee ballot based on age). Thus, as pleaded, there is no issue with the design of the voter registration application form.

Second, Plaintiffs argue that Texas Election Code § 31.005(a)–(b), which authorizes the Secretary to "take appropriate action to protect the voting rights of the citizens" and to order local officials to correct any offending conduct, provides sufficient connection to enforcing the alleged wet signature rule on the county registrars. But, again, Plaintiffs did not plead

---

[6] Plaintiffs also argue that the Secretary is sufficiently connected to the enforcement of the alleged wet signature rule because the Secretary provides training on election law to certain officials, but they refer only to sections of the Texas Election Code applying to volunteer deputy registrars, rather than the county registrars who actually reject the applications. *See* TEX. ELEC. CODE ANN. §§ 13.047, .048; *see also id.* §§ 13.039(a), .042 (noting that a volunteer deputy registrar has a limited duty of reviewing a voter registration application for completeness and then passing complete applications to the county registrars for review). Those provisions fail to show that the Secretary has the connection required by our precedent to the enforcement of the alleged wet signature rule.

Case 5:20-cv-00008-OLG Document 46 Filed 06/28/21 Page 10 of 10
Case: 20-50667 Document: 00515916630 Page: 8 Date Filed: 06/28/2021

No. 20-50667

that the Secretary took such action or even that the Secretary threatened to do so. *See id.* at 181 (observing that our precedent requires the necessary connection to be "not merely the general duty to see that the laws of the state are implemented, but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty" (internal quotation marks and citation omitted)). The most that Plaintiffs pleaded was that the Travis County registrar "reversed course" and rejected voter registration applications submitted without a wet signature—but they did not allege that the registrar did so under threat from the Secretary, or anything similar.

We therefore hold that our precedent requires us to conclude that the Secretary lacks sufficient connection to the enforcement of the alleged wet signature rule for the *Ex parte Young* exception to apply. Accordingly, we REVERSE the district court's denial of sovereign immunity and REMAND from this interlocutory appeal with instructions to dismiss for lack of subject matter jurisdiction.[7] We also DENY the Secretary's motion to strike the documents in Plaintiffs' addendum as moot.

---

[7] Because we hold that the Secretary lacked a sufficient connection to the enforcement of the challenged statute, we need not, and do not, address whether Plaintiffs requested the type of relief required under *Ex parte Young*.